## John Davis v. The State.

### No. 2848.     Decided December 9, 1903.

**1.—Murder in Second Degree—Wife as Witness—Statute Construed.**

Under articles 774 and 775 of the Code of Criminal Procedure it is held to be reversible error for either the husband or wife to testify against the other; and such testimony is not admissible whether excepted to or not; nor can one testify against the other even if the other consent to the admission of the testimony. Especially is a communication by the one to the other while married, even after they were divorced, inhibited by the letter and spirit of these statutes.

**2.—Same—Evidence—Corroboration—Practice.**

Where the State was permitted to ask the wife of deceased, "if she had

ever told anybody that deceased had a pistol that night;" and she was permitted to answer that "she had not," Held error in that a witness who has not been impeached by the adverse party can not be corroborated by showing that she made the same statement, testified to, at other times and to other parties.

**3.—Adequate Cause—Charge.**

Where the court charges upon adequate cause, the adequate cause so charged upon should be that brought out in the evidence.

Appeal from the District Court of Jefferson. Tried below before Hon. A. T. Watts.

Appellant was tried and convicted of murder in the second degree; penalty, five years confinement in the penitentiary.

Appellant was tried upon an indictment charging him with the murder of one Ed Gilder by shooting him with a gun on the 4th day of August, 1900.

Trouble had existed for some time between appellant and the deceased, who was his father-in-law. Deceased had objected to the marriage of his step-daughter to appellant, but subsequent to the marriage, he induced defendant to move on and improve the land owned by himself (deceased); that subsequent to the improvements erected on the land, deceased, by threats of violence and continuous personal abuse, drove appellant from his home, caused a separation between him and his wife, and kept not only the improvements placed upon the land by appellant, but the personal effects of appellant as well. He had stated that he could make defendant's wife do anything he wished, and, in proof of this assertion, he caused the separation between the wife and defendant. Besides this, he caused the defendant to be prosecuted; and in the presence of the magistrate had threatened defendant's life. He cursed and abused defendant in the presence of others, stating "that he was going to drive him (defendant) out of the piney woods, or make him leave the country." On the night of the homicide he was drinking and armed and went to the place of the homicide with the avowed purpose of making good his threats of driving him from the premises or of killing him. Upon meeting defendant, he began cursing and abusing him; he passed defendant and left him on the little gallery as he entered the house, and continued, in the presence of those who were in the house, and in the presence and hearing of defendant, cursing and abusing him, walking back and forth toward and from the door near which defendant was sitting. Defendant's evidence shows, practically without dispute, that while standing near the door, or in the door, deceased made some demonstration as if to draw his pistol, whereupon he was shot by defendant.

Several of the witnesses testified as to deceased having what looked to them as the butt end a pistol sticking out from under his clothes while he was pacing the floor and cursing defendant; and one of them testified: "I saw the butt end of a pistol sticking out from under Ed Gilder's clothes. The pistol seemed to be in Ed Gilder's side, and he had his hand on it at the time he was shot. We did not take the pistol off of him after he was shot, but his wife, Lizzie Gilder, did take it off."

This, together with those stated in the opinion, are the facts briefly stated.

*Obrien, John & Obrien,* for appellant.—Under the common law, without statutory enactment, a wife can not be used as a witness either for or against her husband. Greenl. on Ev., sec. 334; 29 Am. and Eng. Enc. of Law, p. 622.

Our statute has relaxed the rule to the extent that a wife is competent to testify for her husband, but not against. The rule as to her incompetency against the husband remained unchanged. Code Crim. Proc., art. 775; Bunch v. State, 7 S. W. Rep., 21.

The fact that at the time the witness' spouse intended that a divorce has been granted does not effect the rule. Especially is this true if the fact testified to was obtained by reason of, or if the same was a marital communication. Inman v. State (Ark.), 47 S. W. Rep., 559; Greenl. on Ev., sec. 337; 29 Am. and Eng. Enc. of Law, 628.

It is error, and against public policy, to permit a wife to testify against a husband, although without protest on the part of the husband and without exception being reserved. Brock v. State, 71 S. W. Rep., 21.

A witness that has not been impeached by the adverse party can not be corroborated by showing that he has made the same statement testified to at other times to other parties. Riojas v. State, 36 S. W. Rep., 268; Doucette v. State, 45 S. W. Rep., 800; Red v. State, 46 S. W. Rep., 408.

The court having charged murder in the second degree, predicated solely upon a "sudden transport of passion" aroused without adequate cause, and the jury finding the existence of that particular kind of murder in the second degree, it is incumbent that it should define and correctly define "adequate cause." Thomas v. State, 74 S. W. Rep., 36; Whitaker v. State, 12 Texas Crim. App., 436; Brunett v. State, 12 Texas Crim. App., 521.

Where the issue of "adequate cause" is raised by the evidence, it is error to charge a particular kind of "adequate cause" that is not raised by the evidence. Bracken v. State, 16 S. W. Rep., 192; Stegald v. State, 22 Texas Crim. App., 491; Hackett v. State, 13 Texas Crim. App., 400; Warthan v. State, 55 S. W. Rep., 56.

*Howard Martin,* Assistant Attorney-General for the State.—Appellant in his first assignment of error insists the case should be reversed because Sibbie Robinson, his divorced wife, was by the State made a witness against him, and on behalf of the State testified to certain incriminative communications made by appellant to witness before their divorcement, as husband and wife, and while the marriage relation in fact existed. That the communications were made while the marriage relation subsisted, and that they were incriminative in their nature, is conceded by the State. We note that no objection was made nor exception reserved to their admission in the trial court, and this is admitted by appellant.

His contention is that he can for the first time raise an objection to this testimony on appeal without presenting the matter by bill of exceptions. He cites Brock v. State, 71 S. W. Rep., 31, as authority for his insistence, which case holds that the State can not use the wife as a witness to prove facts material against her husband, though the question of the competency of the witness and the testimony was raised for the first time on appeal.

The State submits that it does not follow from the doctrine and rule announced in the Brock case that the case at bar should be reversed; the two cases are easily distinguishable. There the wife was an incompetent witness by virtue of article 775, Code of Criminal Procedure. She was absolutely prohibited from being a witness against the husband, and made so on the grounds of public policy, which "rests upon the considerations connected with the peace of families." But article 774, Code of Criminal Procedure, which the court is now called upon to interpret, does not make the divorced wife an incompetent witness. She is not thereby disqualified from being a witness against her former husband. She is only prohibited from testifying as to communications made while the marriage relation subsisted. The rule announced in article 774 does not "rest upon considerations connected with the peace of families," as the rule announced in the Brock case by virtue of article 775. Why? Because in one case there is a family, "and society has an overshadowing right that family matters should not be dragged into the courts of the country to the subversion of the family relations, which is the paramount substratum and basic principle of society." In the other there is no family. It has been dissolved. Perhaps, as in this case, new family relations have been established; society has no special interest in divorced husband or wife which is to its benefit; it rather looks upon them with disfavor; they are often menaces to society, and never a benefit. The rule applicable in the case at bar is the one which governs as to the admission of privileged communications between client and attorney; and it is, as qouted by Presiding Judge Davidson in the Brock case, in Stone v. Bowman, 13 Peters, 209, "But this privilege is a privilege of the client and not of the attorney." See also Walker v. State, 19 Texas Crim. App., 176. Therefore the wife, as such, and society have lost their rights to object to the testimony of Sibbie Robinson, appellant's divorced wife; no one except appellant has or had a right to object to this testimony; and he could waive his right, which he has done. Article 22, Penal Code, provides: "The defendant in a criminal prosecution for any offense may waive any right secured to him by law, except the right of trial by jury in a felony case."

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at five years confinement in the penitentiary.

Upon the trial the State proved by Sibbie Robinson the following:

"I am the daughter of Ed Gilder, deceased, and was prior to and at the time of the killing of Ed Gilder the wife of defendant, John Davis, but have since the death of Ed Gilder married a man by the name of Robertson. I was at the house of Ed Gilder at the time he was killed, down at Aunt Emily Ben's, and did not see the shooting. It was at Aunt Emily Ben's, on the little gallery of the little house used by her for the purpose of amusement and giving parties. He was lying on his side and his entrails were out. He had his good mind. He was talking." Q. "Did he say anything with reference to his condition?" A. "He said, 'Sweetheart, you begged me to stay at home, but I refused to do so. I am shot. John Davis did it. He slipped up and shot me. He did it with that old gun he had.' He said it snapped twice before it fired. He said he was a dead man. He was talking to my mother, Lizzie Gilder, at the time. Just before defendant went to Aunt Emily Ben's to live he and I, as husband and wife, were living in a little house of ours. After our marriage we had lived about three months in the house with deceased, Ed Gilder, and his wife. It was about three weeks before the killing of Ed Gilder that John Davis had gone to Aunt Emily Ben's to live." Q. "At the time you left your father's house, as the wife of John Davis, what was the conduct of John Davis to your father?" A. "One night when father was sick, defendant told me to hang his overalls by the fire to dry. I did so, and about 2 o'clock in the night he wanted me to get up and go after his overalls. I told him I would not, because it was not time for him to go to work. He said, 'That is what I say about a lot of damn fools; I have a good notion to get my gun and kill the whole bunch.' Then papa, from the other room, said, 'Davis, don't make so much noise; I am as sick as I can be.' Defendant kept fussing and told deceased if he did not like it he could help himself. Defendant attempted to get his gun, and get in the room. This is all he did."

At the time this testimony was introduced appellant reserved no exception, nor was any motion made after its introduction to exclude the same from the consideration of the jury; nor was any bill of exceptions reserved in any way to its introduction. It is urged for the first time in this court as a reason for the reversal of this case.

Article 774 of the Code of Criminal Procedure provides: "Neither husband nor wife shall in any case testify as to communications made by one to the other while married; nor shall they, after the marriage relation ceases, be made witnesses as to any such communication made while the marriage relation subsisted, except in a case where one or the other is prosecuted for an offense, and a declaration or communication made by the wife to the husband, or by the husband to the wife, goes to extenuate or justify an offense for which either is on trial." In Brock v. State, 71 S. W. Rep., 20, construing article 775 of the Code of Criminal Procedure, this court held that the testimony of the husband or wife against the other would not be admissible, and its admis-

sion woulα constitute reversible error whether excepted to or not, nor could one testify against the other, even if that one consented to the admission of the testimony. It will be noted from the above that appellant was talking to his wife at the time he made the threats against deceased; and hence her testimony is a communication made by the husband to the wife, which is inhibited by the letter and spirit of article 774, supra. We see no reason here, if the testimony and statement held by this court to be reversible error in the Brock case, supra, without bill of exception, why the evidence disclosed should not be equally so. While the record shows that the parties were divorced, yet the article under consideration precludes her testifying to any communication made to her by her husband regardless of said divorce. Therefore it follows that the court erred in permitting this testimony to be introduced. For the reasons at length on this subject see Brock's case, supra.

Bill number 3 complains that the State was permitted to ask witness Lizzie Gilder, wife of deceased, if she had ever told anybody that deceased had a pistol that night, and she was permitted to answer that she had not. A witness that has not been impeached by the adverse party can not be corroborated by showing that she has made the same statement testified to at other times to other parties. This witness was not impeached, and the bill so shows. Riojas v. State, 36 S. W. Rep., 268; Doucette v. State, 45 S. W. Rep., 800; Red v. State, 46 S. W. Rep., 409.

The charge of the court, when considered as a whole, does not present any reversible error; at least such error as was injurious to appellant. Appellant insists that the court presented issues, suggesting adequate cause, not raised by the evidence. Without going into details, we would suggest that on another trial adequate cause charged upon should be the cause brought out in the evidence.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*