## DAVE UPTON v. THE STATE.

No. 3012. Decided May 24, 1905.

**1.—Murder in Second Degree—Evidence—Sending Notes to Defendant's Wife.**

Where in a prosecution for murder, there was evidence that defendant killed deceased on account of the latter's familiarity with the former's wife, and that she had received a note purporting to have been written by the deceased, which was disputed, however, by the prosecution, it was error to exclude testimony showing the friendly relations existing between the deceased and defendant's children for the purpose of showing that deceased would likely procure defendant's children in carrying notes between deceased and defendant's wife; and this whether defendant knew at that time that deceased was sending such notes by said children to defendant's wife or not.

**2.—Same—Recalling Witness—Discretion of Court—Practice.**

It is permissible to recall a witness, even after the defendant has closed his case, either in rebuttal, or where there is some controversy as to what the

witness may have stated; and he can be required to restate his testimony on the point. This is a matter within the discretion of the court.

**3.—Same——Bill of Exceptions—Must State Purpose of Testimony.**

Where the object and purpose of the rejected testimony is not stated in the bill of exceptions the matter can not be reviewed; and the court is not permitted to look to the statement of facts for the evidence in order to understand such object and purpose.

**4.—Same—Evidence—Surrender of Defendant.**

Where there is no controversy on the question as to the voluntary surrender of defendant, there was no error in excluding testimony as to the circumstances attending the defendant's surrender.

**5.—Same—Evidence—Res Gestae—Declaration of Third Party.**

Where in a prosecution for murder, the wife of defendant had testified to the delivery to her of a note from the deceased, immediately preceding his killing by defendant, by one of her children, it was error to exclude testimony as to what the child said as to who sent the note, and that it was sent by deceased; and this, although the object and purpose of such testimony is not stated further than that it was res gestæ.

**6.—Same—Withdrawal of Jury—Discretion of Court—Practice.**

Where the trial judge had the jury taken out of court to enable him to determine the issues to be submitted to the jury, he was exercising proper judicial discretion, although at the time counsel for defendant was arguing a question of law to the court and objected to such withdrawal of the jury.

**7.—Same—Verdict—Misspelling of Word.**

A verdict in a felony case which uses the word "punish" instead of "punishment" is valid on motion for new trial."

Appeal from the District Court of Brewster. Tried below before Hon. B. C. Thomas.

Appeal from a conviction of murder in second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Morris & Van Sickle* and *George Powell,* for appellant.—The statements of the child of defendant and his wife at the time the child delivered the note to defendant's wife to the effect that Reed had sent the note to Mrs. Upton was a part of the res gestæ of the act of delivering the note to the defendant's wife, and should have been admitted in evidence by the court corroborative of the fact as contended for by the defendant that the note was actually sent by the deceased, George Reed. Wallace v. Byers, 14 Texas Crim. App., 580; Mutual Life Insurance Co. v. Tillman, 84 Texas, 31; McGowan v. McGowan, 52 Texas, 657; Ex parte Blumer, 27 Texas, 735; Wallace v. Wilcox, 27 Texas, 60; Smith v. Savings Bank, 1 Texas Crim. App., 123.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of ten years; hence this appeal.

The facts show that appellant and deceased were both employed at a mining camp in Brewster County. Appellant had a wife and two

children, under 9 years of age, who lived at the camp with him.  Up
to a short time previous to the homicide appellant and deceased were
friends. ˙ Two or three days before the killing, appellant discovered
some acts of undue familiarity between deceased and his wife.  Ap-
pellant's work was in superintending the engine of the mining company
at night; and on Saturday night before the homicide, which occurred
on the following Tuesday, he had occasion to go to his camp, and there
discovered deceased with his arms around his wife, as he states, "in
the act of hugging his wife."   On the next day he remonstrated with
deceased about his conduct, and they had some altercation.   Later on,
during Sunday he started with his wife in a hack to Mariposa, where
they could secure a stage for the purpose of sending her to the train,
and thence to El Paso; evidently for the purpose of a temporary separa-
tion, or getting her out of the way of deceased.  He found the stage
crowded and returned to the mining camp with his wife and children
on Monday.  On Tuesday, he was lying in bed in his tent, his wife
being in the tent sewing, and the children brought her a note, which
the evidence for the defense tends to show, was from deceased Reed.
This note stated, in substance, for Mrs. Upton not to leave camp, that
he would either run her husband off or kill him, and was signed
George Reed.  Evidently appellant was not asleep at the time this
note was handed to his wife, as he raised up directly and demanded
that she should hand it to him.  She pulled the note out of the machine
drawer, where she was sewing, thew it down and ran out of the tent.
Appellant read it, and immediately took his winchester gun, and went
to where deceased·was, found him with two Mexicans (also employees of
the mining camp) and immediately shot him down.  At the first shot
deceased fell, and defendant then shot him again.  Appellant says,
when he got to where deceased was, deceased made a demonstration as
if to attack him and he shot him.  This is a sufficient statement of the
evidence to present and discuss the assignments.

Appellant questions the action of the court refusing to permit him
to prove by the defendant, while a witness, that George Reed's (de-
ceased's) relations with his children were friendly; that he played with
the children frequently, placed them on burros, etc., assisting them
to ride, etc.  This testimony was excluded.  Appellant in the bill fails
to assign any purpose that would be subserved on his behalf in the
admission of said testimony.  The bill· should have stated the object
and purpose of said evidence.  In the court's explanation to this bill
it is stated that the evidence does not show that at the time this
conversation occurred between Upton and Reed, that Reed had ever
sent a note by the children or that Upton had ever heard that Reed
had sent a note by the children or that he had any intention of send-
ing a note by them.  This explanation of the court evidently suggests
that the purpose of appellant in proposing to adduce the proof offered
was to show that deceased would likely use appellant's children in send-
ing notes to his (appellant's) wife.  It does not appear from this bill,

however, that the sending of the notes by the children was a controverted matter. In the absence of some showing in the bill itself as to the object and purpose of this testimony, and how its rejection injuriously affected appellant, we are not authorized to supply it. The bill should be complete within itself, so as to point out the error of the court, and show that the court's action in rejecting the evidence operated to the injury of appellant.

The next bill is with reference to the action of the court recalling the State's witness Pablo Viegas, after he had testified, and asking him if he was armed on the occasion of the shooting, and whether he remained to see the conclusion of the difficulty. In answer to which he stated that he was not armed, and that he did not run away, but remained to see the conclusion of the difficulty. It is permissible to recall a witness, even after the defendant has closed his case, either in rebuttal, or where there is some controversy as to what the witness may have stated, and he can be required to restate his testimony on the point. This is a matter within the discretion of the court. As presented we see no error.

While appellant was on the stand, testifying as a witness in his own behalf, and was testifying as to a conversation had' with deceased on Sunday morning, he started to testify that in the same conversation he told deceased not to send any notes to his (defendant's) wife by his children. Counsel for the State objected, on the ground that such statement would be self-serving, irrelevant and immaterial to any issue. The court sustained the objection. It will be seen that the object and purpose of said testimony is not stated in the bill. Unless the object and purpose of testimony is obvious, the bill should always state such object and purpose, in order that the court below may intelligently pass on the objection to the evidence. Rogers v. State, 34 Texas Crim. Rep., 612; Cline v. State, 34 Texas Crim. Rep., 347; Martin v. State, 32 Texas Crim. Rep., 441; Graham v. State, 28 Texas Crim. App., 582. It has further been held that the statement that the testimony is irrelevant and immaterial is not a ground of objection, unless it is obviously so. Hamblin v. State, 41 Texas Crim. Rep., 135. In addition to this the court further explains that the evidence does not show that at the time the conversation occurred between Upton and Reed, that Reed had ever sent a note to his wife or other person by the children, or that Upton had ever heard that Reed had sent, or intended to send any note by the children. Of course, if we were permitted to look to the evidence, we might understand the object and purpose of the attempted introduction of this testimony; but we are not allowed to help out bills of exception in this manner.

We do not believe there is anything in the refusal of the court to permit appellant to state the circumstances attending his surrender. There was no controversy on this point, as to a voluntary surrender by appellant, and no evidence introduced by the State remotely tending to show flight.

Bill number 5 shows that when Sadie Upton (wife of defendant) was testifying in his behalf, and had testified to the delivery to her of a note from the deceased George Reed, immediately preceding the killing, being the second note witness testified to having received from George Reed, as shown by the statement of facts, said note having been delivered by one of the children of defendant to his wife, Sadie Upton, in company with the other child, defendant proposed to prove in this connection what the child said, when in the act of delivering the note to said witness, as to who sent the said note to wit: that the child said at the time that it was sent to witness (wife of defendant) by George Reed. On objection this testimony was excluded. This was objected to on the ground that it was hearsay and immaterial. The bill does not show what object and purpose appellant had in offering this testimony. The court in the explanation shows that he excluded it because appellant was not present at the time. Appellant in his brief insists that the testimony was admissible as a part of the res gestæ of the act of delivering the note. This contention, the writer believes is correct. 1 Wharton Law of Ev., 2nd edition, section 262. However, if it be conceded that this statement of the child at the time of delivering the note was res gestæ, that is, a part of the transaction of its delivery, as stated before, appellant does not show what object and purpose he had in introducing this res gestæ testimony. Without such statement we cannot undertake to say that it would have served any legitimate purpose. See authorities heretofore cited. Appellant argues at length in his brief that it was a controverted question as to the genuineness of said note, that is, as to whether it was written and sent by George Reed, deceased, to the wife of appellant. If this object and purpose had been stated in the bill, we believe there can be no question as to its admissibility. But it is not so stated; and we are not permitted to help out the bill by a reference to the statement of facts.

Appellant objected to the court sending the jury out while counsel for defendant were arguing the questions of law to the court. As explained by the court, it occurred in this wise: Counsel for defendant was proceeding to address the court as to the legal propositions controlling the case, and over his objections the court sent the jury out. After this discussion before the court, the jury returned, and the court explains that appellant had full opportunity to discuss before the jury the law applicable to the facts of the case, and to apply such law to the facts; that his only object in sending the jury out was to enable the court to determine what issues should be presented to the jury. In this exercise of judicial discretion we do not believe there was error. See Vernon v. State, 33 S. W. Rep., 364.

Appellant insists that the case should be reversed on account of the verdict of the jury, which is, as follows: We the jury find defendant guilty of murder in the second degree and assess his *punish* at confinement in the State penitentiary for ten years." His insistence

being that the word "punish" is unintelligible in this connection. We do not agree .to this contention. Bain v. State, 9 Texas Ct. Rep., 950.

Appellant also urges that the testimony is not sufficient to sustain the verdict. We confess that looking to the evidence it appears to us very much like a case of manslaughter; but we are not prepared to say that the jury was not authorized to find appellant was not excited by passion at the time, and so they may have been justified in finding murder in the second degree.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

June 14, 1905.

HENDERSON, JUDGE.—This case was affirmed at a former day of this term and now comes before us on motion for rehearing. Appellant urgently insists that the court was in error in holding that he failed to state the purpose he had in view in showing the friendly relations existing between George Reed (deceased) and appellant's children; and further, that the court was mistaken in holding that it was not controverted matter about Reed sending notes by the children of appellant. A more critical examination of this bill suggests that appellant does state that his purpose in introducing this testimony was to show that deceased would likely procure appellant's children in carrying notes between himself and appellant's wife. True, the court states in qualification to said bill that the evidence does not show that at the time this conversation occurred between Upton and Reed, that Reed had ever sent a note by the children. On reflection it does not occur to us that this explanation disposes of appellant's bill of exceptions in this particular. In our view it would not matter whether appellant knew at that time anything in regard to the notes, or that deceased was sending notes by his children to his wife. Now, if as stated in the original opinion, there was no controversy in. regard to deceased sending the notes by appellant's children to his (appellant's) wife, then the refusal of the court to permit the testimony, perhaps would not be injurious to appellant. However, we do·find in the testimony that the genuineness of these notes was contested by the State. It was proven by the mother of deceased that the note produced in evidence did not have the genuine signature of her son, George Reed. So that in a sense there was a controversy as to the genuineness of these notes, which evidently embraced the fact as to whether or not they were sent by deceased to appellant's wife. Taking this view of the question, we were evidently in error in holding that the court was correct in excluding the testimony as is shown by the bill. We also believe that we were mistaken in holding that appellant's bill number 5 failed to show·error. If the delivery of the note from deceased to appellant's wife by appellant's little child was admissible in evidence, and unquestionably it was, what occurred at that time, as stated in the original

opinion, was a part of the res gestæ of that act, and was admissible as a part of the act; and although the object and purpose is not further stated than that it was res gestæ, we believe that was a sufficient statement to render it admissible, in connection with the delivery of the note. If that was a material circumstance, it was obviously material to show what was said by the messenger at that time as to who sent it.

The motion for rehearing is accordingly granted, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*