## G. I. RASBERRY v. THE STATE.

### No. 5900.   Decided October 20, 1920.

**1.—Murder—Theory of Defense—Charge of Court.**

Where, upon trial of murder, the theory of the State was that the fatal shot was fired by the defendant, using a shotgun after firing several shots with a pistol, and defendant's theory was that he used no shotgun and that deceased was not killed by him but was the victim of one of the shots fired by parties who were engaged in the difficulty, and submitted a requested instruction that before they could render a verdict against him the jury must believe beyond a reasonable doubt that the shot or shots which killed the deceased were fired out of a shotgun, then in the hands of the defendant and no one else.  The same should have been given, as it was not contained in the main charge and the State did not claim conspiracy, and besides it was the defense's theory arising from the evidence.  Following Martin v. State, 57 Texas Crim. Rep., 264, and other cases.

**2.—Same—Self-defense—Charge of Court—Defense of Property—Undisclosed Motive.**

Where, upon trial of murder, the testimony of the defendant claimed the right of preventing one of the assaulting parties from his entering his premises and interfering with his protection of his property, it was not incumbent upon the defendant to determine the undisclosed purpose of the parties so trespassing, and a charge of the court limiting this right was error.  Following Brumley v. State, 21 Texas Crim. App., 223, and other cases.

**3.—Same—Change of Venue—Practice on Appeal.**

Where the judgment is reversed and the cause remanded, it is not necessary to review the evidence introduced upon a motion for change of venue.

Appeal from the District Court of Rusk.   Tried below before the Honorable Chas. L. Brachfield.

Appeal from a conviction of murder; penalty, ninety-nine years imprisonment in the penitentiary.

The opinion states the case.

*R. T. Jones* and *A. U. Puckett,* for appellant.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

MORROW, JUDGE.—The appeal is from a conviction for the murder of Ethel Pool.  The punishment is fixed at confinement in the penitentiary for a period of ninety-nine years.

The appellant resided on a farm rented from a neighbor, a relative of the deceased.  His family consisted of a wife and several children, including a grown son and one about seventeen years of age.  Hogs belonging to Tom Pool, a married son of deceased, and

to Dixie Pool, her husband, depredated upon the property of the appellant. The law prohibiting hogs from running at large appears to have been in force in the community, but not observed by the parties mentioned. A few days before the homicide an altercation took place between the appellant and Tom Pool, growing out of these depredations. The State's version of the affair, as developed in the testimony, was that the appellant, incensed by these matters, had prepared himself to kill Dixie Pool, and had threatened to do so should Dixie Pool enter his premises. From the State's viewpoint, on the occasion of the homicide the appellant was driving from his premises about a dozen hogs belonging to Dixie Pool. The latter, observing this action from his home, about sixty steps from appellant's enclosure, approached and demanded the reason for appellant's conduct; that the appellant disregarded the inquiry until Pool started in the premises through the wire fence surrounding them, when the appellant approached him, exhibiting a pistol, which he fired at Pool three times without effect; that Pool called for his gun, which was brought to him from his home by Willard, and as Willard approached he was fired upon by the appellant's son, who had, observing the difficulty, come upon the scene some distance from the parties. He used a shotgun, and the shots took effect upon the person of Willard, who fell. The appellant, picking up a shotgun at about the same time, fired, killing the wife of Dixie Pool, who had come to her husband during the melee, and had hold of him at the time she received the injury. Dixie Pool then siezed the gun brought by Willard, according to his theory, and fired at the appellant and at his son, and about the same time Dixie Pool received a wound from a shotgun.

The evidence showed without dispute that none of the pistol shots took effect; that about a dozen BB-shot struck the person of Mrs. Pool, scattered so that some of them struck her head, some her body, and some her legs. Two of these shots were so placed that they were fatal. Dixie Pool also received a wound from a shotgun, and the wounds received by Willard were from a like instrument, as were those received by Ike Rasberry. The appellant was unharmed.

The version of the appellant was that, following the altercation between him and Tom Pool, the conduct of Tom Pool and Dixie Pool had been hostile; that they had been around his place with firearms; that on the occasion of the difficulty with Tom Pool a threat had been made that Dixie Pool would harm the appellant; that he had made no threats against Dixie Pool, but that he was poverty stricken and the hogs had destroyed a large portion of his potatoes, which he needed for the sustenance of his family, and that to protect the remainder he was driving the hogs off of his premises, and armed with a pistol in order that he might protect himself. The altercation took place some two hundred yards from the house of the appellant, but on his premises. According to the theory of the appellant as developed on the trial, while he was engaged in driving the hogs Dixie

Pool approached, and with an insulting epithet demanded the cause of his interference with the hogs, and was informed that they should be restrained as they were destroying his property. Pool then started on to his premises, when he was warned to refrain from doing so; that he disregarded the warning, and came in the direction of the appellant with his hand behind him, his language and attitude being threatening, and the appellant retreated. Hearing Pool call for his gun, the appellant drew his pistol, demanding that Pool proceed no further. Pool continued to advance, and Willard approached from the rear of Pool with a gun, and from that position discharged the gun. When the gun fired, appellant looked and observed his son Ike, who fired his gun, and Willard fell. Pool seized the gun which Willard had brought, and fired at the appellant, and also fired at Ike, appellant's son; that Willard fired the first shot, to which appellant responded with three successive shots from his pistol; that just before the shooting began he saw a woman coming in a direct line toward Mr. Pool; that during the firing of the shotguns Pool fell; that he had no knowledge of his son's presence until after Willard shot; that he did not have a shotgun in his possession at any time during the melee, but the only shotgun he owned was at the time at his residence two hundred yards away.

The issue of conspiracy was not submitted, and seems not to have been suggested or contended for by the State, its position being that the fatal shot was fired by the appellant, using a shotgun, after he had fired three shots from his pistol. There was a sharp conflict in the evidence on this point, appellant and members of his family insisting in their testimony that he had no shotgun; that at the time the shooting ended there were three remaining loads in his pistol. This was not controverted. The State's witnesses insisted that during the fight they saw the appellant in possession of the shotgun, Dixie Pool claiming that he saw the appellant fire it. The relative location of the parties during the transaction, the distance and direction from each other, was the subject of much testimony, which is not made as clear as might be wished, in that the witnesses referred to a map or plat which is not found with the record. We gather from the evidence, however, that at the time of the shooting appellant and Dixie Pool were some thirty or forty yards apart; that appellant's son was about an equal distance from Pool, in a different direction. It is made clear that all of the shots that took effect upon any of the parties were fired from a shotgun; that the distance between the parties firing was such that the shots fired scattered, and that those which struck the deceased were distributed over a large area of her body; that some shots were fired by Ike Rasberry, and that some of them took effect upon Willard, who was approaching Dixie Pool from the same direction that the deceased approached him, and at about the same time. It is claimed by the appellant that

Willard also fired, and strenuously insisted that appellant at no time had or used a shotgun.

In this state of the testimony, the appellant advanced upon the trial, and urges here, the theory that the deceased was not killed by him, but was the victim of one of the shots exchanged between Ike Rasberry and Willard and Dixie Pool. The refusal to submit this theory to the jury upon appellant's request is made the basis of complaint. The main charge made no reference to this phase of the case, further than to instruct the jury that if appellant unlawfully, and with malice aforethought, shot at Dixie Pool with the intent of killing him, or shot at the deceased with the intent of killing her, he would be guilty. The requested instruction embodied "that before they could render a verdict of guilty against the appellant, they must believe beyond a reasonable doubt that the shot or shots which killed Mrs. Pool were fired out of a shotgun then in the hands of appellant, and no one else, and if of this they had a reasonable doubt, they would acquit him." This charge in substance, we think, should have been given, or embodied in the main charge. It was in consonance with the defensive theory of the appellant arising from the evidence. It presented a phase of the case favorable to the appellant which was not specifically touched in the main charge. Unless appellant and his son were acting together as principals, an issue which was not presented, the killing of deceased by Ike Rasberry, whether by intent or accident, would not have been chargeable to the appellant. Ex parte Guffee v. State, 8 Texas Crim. App., 409. The refusal to embody the charge presenting this theory was, in our opinion, not warranted, and may have been prejudicial to the appellant. Irvine v. State, 20 Texas Crim. App., 41; Martin v. State, 57 Texas Crim. Rep., 264; Vernon's Texas Crim. Statutes, vol. 2, p. 424, and cases listed.

In connection with the charge on self-defense, the court gave an instruction undertaking to set forth the rights of appellant with reference to preventing Dixie Pool from entering the appellant's premises and interfering with his protecting his property. This paragraph of the charge, we think, fairly and accurately presented the law, save that part of it which qualified it with the statement: "If you believe from the evidence that the said Dixie Pool was on said land without authority and not on a peaceful mission." The law did not make it encumbent upon the appellant to determine the undisclosed purpose of Pool in entering the premises. His rights must be determined from the things that took place, and not any undisclosed purpose that may have been in the mind of Pool. Brumley v. State, 21 Texas Crim. App., 223; Branch's Ann. P. C., sec. 1930.

In view of the disposition we are making of the case, we have not deemed it necessary to review the evidence introduced upon the motion for a change of venue, that being a question that may not arise upon another trial, and if so not upon the same state of facts. The

other matters presented have been examined, and in our judgment are without merit.

For the reasons pointed out, we are constrained to order a reversal of the judgment.

*Reversed and remanded.*