## T. B. ARCHER v. THE STATE.

### No. 8003.   Decided June 11, 1924.

### Rehearing denied June 27, 1924.

**1.—Murder—Evidence—Declarations of Third Party—Undisclosed Motive of Deceased.**

Where, upon trial of murder, the State over the objection of defendant was permitted to prove by the wife of the deceased that after her husband reached the Sisk home on the night of the homicide, she told him of the conversation she had with appellant in the afternoon, and that deceased said, "I haven't done anything and am not afraid, come on baby, and let's go home" and also to the testimony of another witness to similar declarations by the deceased, the same not being known to defendant, are under the facts of the instant case reversible error.   Following: Rasberry v. State, 88 Texas Crim. Rep., 13, and other cases.

**2.—Same—Evidence—Bias of Witness.**

Where a defense witness had been present at the place of the homicide having driven there in a car which belonged to appellant and in which he left after the killing and heard testimony coinciding with that of the appellant and other members of his family, there was no error in permitting the State in showing a probable interest or bias in the matter by reason of her former relations with appellant.

**3.—Same—Evidence—Intent of Defendant.**

Where it was the theory of the State that defendant and his brother had pre-arranged to be at the place where deceased was killed, and it was contended by the defendant, on the other hand, that he did not know that his brother was going to be there, etc., the testimony of a disinterested witness that defendant's brother was there to bring his mother butter, milk, and chickens, etc., should have been admitted.

**4.—Same—Evidence—Bill of Exceptions—Practice on Appeal.**

Where it is not at all probable that the testimony of the State with reference to the reputation of deceased will arise in the same form as then, the matter need not be noted in this appeal.

**5.—Same—Rehearing—Res Gestae.**

The contention of appellant in his motion for rehearing that the statement made by deceased to his wife a few minutes before the homicide and which was unknown to defendant was not res gestae, and, therefore, inadmissible, is untenable. Following: Wooley v. State, 64 S. W. Rep., 1064.

Appeal from the Criminal District Court of Tarrant. Tried below before the Honorable Geo. E. Hosey.

Appeal from a conviction of murder; penalty, forty years imprisonment in the penitentiary.

The opinion states the case.

*McLean, Scott* and *Sayers,* for appellant.

*Tom Garrard,* Attorney for the State, and *Grover C. Morris,* Assistant Attorney and *R. K. Hangar,* District Attorney, and *W. H. Talbert,* Assistant District Attorney, for the State. On question of res gestae: Renn v. State, 143 S. W., Rep., 168; Girtman v. State, 164 id., 1010; Merritt v. State, 45 id., 21; Curry v. State, 162 id., 857, and cases cited.

HAWKINS, Judge.—Appellant is under conviction for the murder of G. W. Lawley, with an assessed punishment of forty years in the penitentiary.

The killing occurred on the night of September 8, 1922. Mrs. Rhoda Archer, mother of appellant, owned a house in Fort Worth which she rented to deceased and a man by the name of Clements in March, 1922. Mrs. Archer had formerly lived in this house and in the latter part of August desired to resume possession and requested the parties to vacate. The Clements moved without protest. Mrs. Archer moved into that part of the house which the Clements had occupied. A dispute arose between Mrs. Archer and the Lawleys as to the time of their lease, the Lawleys claiming a one year lease, and Mrs. Archer claiming a month to month rental contract. Some ten days prior to the homicide written notice had been given to the Lawleys to vacate. On the day of the homicide appellant went to his mother's home about three o'clock in the afternoon at which time an argument ensued between Mrs. Lawley, appellant and his mother in which some sharp conversation was had. Mrs. Lawley's version is that appellant inquired of her when they expected to vacate the house, and was told by her they expected to move as soon as they had their home built; that he said if they were not moved out by ten o'clock the next day their things would be put out in the road; that she referred him to her husband with whom he declined to communicate, but threatened to "stomp the black s— o— a— b——'s head in the ground." Appellant and his mother deny any such threat, and

say that when appellant asked Mrs. Lawley when they expected to move she replied that they expected to remain in the house for six months; that upon appellant insisting they should move as notice had been served upon them she used some violent language toward him and ordered him out of the house. The mother testified that after appellant left Mrs. Lawley threatened to kill him, and said her husband was carrying a pistol with which ·to kill him; that she communicated this to appellant prior to the homicide. Later in the day appellant went to the office of the justice of the peace and filed a forcible entry and detainer suit against deceased and turned the papers over to the constable and his deputy to be served. These officers testified to some serious threats made by appellant toward deceased in connection with which he intimated that he would secure the aid of his brother and put deceased out of the house without the intervention of the law. Deceased did not arrive home until about 11:30 that night. After the occurrence at the house in the afternoon Mrs. Lawley went to a next door neighbor's (a Mrs. Sisk). From there she telephoned to her husband and remained there until he came home. When he alighted from the street car she met him and they went to the porch of the Sisk home and some conversation there occurred between her and deceased in the presence of Mrs. Litier. Serious complaint is urged at the reception in evidence of this conversation and it will be discussed later. In a few minutes after deceased reached the Sisk home he and his wife proceeded to their rooms at the Archer house, upon the front porch of which at this time were sitting Mrs. Rhoda Archer, Ellis Archer, Mrs. Ellis Archer, a Mrs. Johnson and appellant. The testimony differs widely as to what occurred immediately preceding the shooting. Mrs. Lawley testified that as her husband approached the house Ellis Archer arose from his seat and grappled with him, drew a pistol, and placing it against her husband's stomach backed him out of the yard into the street; that this pistol was fired by Ellis Archer during the time; that after they reached the street her husband asked him to put his pistol down and let him explain; that Ellis Archer called to appellant, saying, ''Come Bud, I've got him:'' that appellant ran out to where they were and shot her husband with a shotgun, which resulted in his death in a few minutes thereafter. Mrs. Lawley says her husband was not armed at the time, that his pistol was in a box in the room occupied by them in the Archer home. Later in the night a pistol was found in this box by the officers and identified as the one belonging to deceased. The testimony of Ellis Archer, his wife, Mrs. Johnson, Mrs. Rhoda Archer, and appellant is in substance that deceased approached the house rapidly; that Ellis Archer inquired of him why he had treated his mother as he had; that deceased immediately grappled with Ellis Archer and attempted to draw a pistol; that they scuffled from the house out to the street and that appellant ran in the house and secured a single barrel shot-

gun and went toward where deceased and his brother were scuffling; that as he approached them they broke apart and his brother said, "Look out, he is going to shoot," whereupon appellant fired the shot that killed deceased. The shotgun used by appellant belonged to Ellis Archer. His presence and the presence of the gun is accounted for in a manner, which if believed, is entirely consistent with his innocence. He lived in the country some ten miles from Fort Worth. Friends by the name of Dyer had gone to his home late in the afternoon. At the time they reached there Ellis Archer and his family were preparing to go to Fort Worth and had some things to take his mother. One of the Dyer boys borrowed Ellis Archer's gun to go hunting. When the Dyers left they inadvertently brought the gun with them to Fort Worth having forgotten to leave it at the Ellis Archer home. It was returned to Ellis Archer that night by the Dyer boy, and placed in the room from which it was secured by appellant at the time of the killing. Ellis Archer denied any knowledge of the dispute which had occurred that afternoon between his brother and Mrs. Lawley, or of the acuteness of the situation which existed at that time as revealed by the testimony. The evidence of some of the neighbors supports Mrs. Lawley's version of the facts incident to the homicide, and others support the version as given by the Archers.

Over objection the State was permitted to prove by Mrs. Lawley that after her husband reached the Sisk home on the night of the homicide she told him of the conversation she had with appellant in the afternoon, and that deceased said, "I haven't done anything and am not afraid, come on baby, and let's go home." Over like objection Mrs. Litier was permited to testify that Mrs. Lawley said to her husband at this time "Hon, don't go in there, (meaning the Archer house) they have threatened to kill you," to which deceased replied, "Baby, I am not afraid of them, I haven't done anything to hurt them, and I am not afraid." Many objections were urged to this testimony, all revolving around the proposition that it was hearsay, out of the presence and hearing of appellant, not communicated to, nor binding upon him. In support of his contention that error was committed in the reception of this testimony appellant cites Rasberry v. State, 88 Texas Crim. Rep., 13, 224 S. W. Rep., 1093; Nelson v. State, 58 S. W., 108; Brumley v. State, 21 Texas Crim. App., 238; Ball v. State, 29 Texas Crim. App., 107, 14 S. W., 1012; Wooley v. State, 64 S. W., 1054; Fuller v. State, 30 Texas Crim. App., 559, 17 S. W., 1109; Clark v. State, 56 Texas Crim. Rep., 293, 120 S. W., 181; Gilcrease v. State, 33 Texas Crim. App., 619, 28 S. W., 531; Lockhart v. State, 53 Texas Crim. Rep., 589, 111 S. W., 1025; Tilman v. State, 51 Texas Crim. Rep., 202, 101 S. W., 210; Carlile v. State, 90 Texas Crim. Rep., 1, 232 S. W., 824; Maclin v. State, 65 Texas Crim. Rep., 384, 144 S. W., 960. An examination of these authorities will reveal that in so far as they here apply they uphold the rule that

if one charged with murder knew or was informed prior to the homicide of the motive, purpose, reason, declarations, or acts of deceased, proof of the same is admissible if it tends to solve any issue in the case; that a defendant can only be bound so far as matters reasonably appeared to him at the time he acted; that proof of deceased's undisclosed reason or motive in being where he was or in going to the scene of the homicide, or proof as to his real destination, if unknown to defendant at the time he acted is not admissible against him where it tends to affect his defensive theory. Many of the cases cited by appellant will be found collated in Branch's Ann. Pen. Code, under Section 1930, page 1080, together with many others under the propositions just stated. As to whether the admission in evidence of the conversation between deceased and his wife should be held to be such error as calls for a reversal of the judgment depends upon whether it could have been appropriated by the jury in such a way as to have impinged upon appellant's right of self-defense or the defense of his brother. We think if Mrs. Lawley told her husband of the occurrence at the Archer home in the afternon it would be reasonable to conclude that she gave her version of it as we find it disclosed from the facts heretofore stated. However, in passing upon the question now before us appellant's view must be kept in mind. What was it? That he had been ordered out of the house by Mrs. Lawley, had been told later by his mother that Mrs. Lawley herself had threatened to kill him, and had also said that deceased was carrying a pistol for the same purpose. All of the defensive testimony is in substance that deceased got off the street car, went to the porch of the Sisk home, and after a few minutes started toward the Archer home at a rapid pace; that he was recalled to the Sisk porch and after remaining a minute or two again approached the Archer home in a hurried manner; that without anything having occurred, save an inquiry upon the part of Ellis Archer as to why deceased had treated his mother as he had, deceased made the first hostile demonstration by taking hold of Ellis Archer at the same time attempting to draw a pistol. It is not for us to determine whether these were the true facts immediately preceding the shooting, but they must be considered in determining the admissibility of the evidence complained of. It was the theory of the State supported by the testimony of Mrs. Lawley and Mrs. Litier, that deceased and his wife approached the Archer house in a peaceable manner; that the Archers made the first hostile demonstration. This was the issue the jury was called upon to determine. After being told by his wife what had occurred in the afternoon the jury are advised by his testimony that deceased said, "I haven't done anything to hurt them, and I am not afraid of them, come on and let's go home." Appellant knew nothing of this statement of deceased, but on the contrary had been informed by his mother that deceased had done something which threatened hurt

toward appellant, to-wit: that deceased was carrying a pistol for the purpose of killing appellant. The jury, seeking a solution of the irreconcilable conflict in the testimony, could with much reason have appropriated the statement of deceased as indicating a peaceable return to his home, and construed his language to mean that he had done nothing to the Archers to cause them to want to do him harm and for this reason he was not afraid of them. If thus appropriated there can be no doubt that the evidence in question did seriously impinge upon the defensive issue involving the commencement of the difficulty. If deceased had told some one that he intended to go to the Archer home and see if he could not reason with them and settle the disputed rental contract in a peaceable manner and this was unknown to appellant, there would be no question as to the inadmissibility of such statement under the authorities referred to heretofore. We can not escape the conclusion that this testimony admitted over appellant's objection might have been, and probably was, appropriated by the jury to solve the crucial question of deceased's conduct upon his approach to the Archer house. (See Bozanno v. State, 60 Texas Crim. Rep., 507; Partee v. State, 86 Texas Crim. Rep., 23, 215 S. W., 201.)

Mrs. W. T. Johnson was a witness for appellant, being present at the place of the homicide, having driven there in a car which belonged to appellant and in which he left after the killing. Her version of the difficulty coincided with that of appellant and other members of his family. Complaint is made in bills of exception 3, 4, 6 and 8 because of attacks made upon this witness by the State showing her probable interest or bias in the matter by reason of her former relations with appellant. In Section 163, page 193, Branch's Ann. P. C. the principle is announced that the motive which operated upon the mind of a witness when he testified is never regarded as an immaterial or collateral matter and that the adverse party may prove declarations of a witness which tend to show bias, interest, prejudice or any other material state or status which fairly construed might tend to affect his credibility; and that the animus, motive or ill will of a witness is never a collateral or irrelevant inquiry. Many authorities are collated by Mr. Branch supporting these proposition. It is also in accord with the rule laid down in Underhill's Cr. Ev., 3d Ed., Sec. 390. We are not in accord with appellant's contention that error was committed in the respect complained of.

It was the theory of the State that appellant and his brother (Ellis Archer) had pre-arranged to be at the Archer home and kill deceased. On the other hand, it was contended by the defense that appellant did not know Ellis Archer was going to be there and that Ellis did not expect appellant to be present; that appellant's mother was sick and that Ellis Archer and his wife had come into town to

bring her some milk, butter and chickens, thus explaining his presence
at the homicide. Ellis Archer, his wife, and Mrs. Dyer testified that
they had brought to Mrs. Rhoda Archer the things mentioned, but
the court excluded the testimony of Arch Dyer to the same effect.
This witness was not related to the parties and upon another trial
his evidence upon this point should be admitted. We have examined
bills of exceptions, 7, 9, 10 and 11 and as we understand them and
the record we think they present no error.

Defendant proved by W. N. Willingham that the reputation of de-
ceased for being a violent and dangerous man was bad. The State
attacked this witness and bills of exceptions 12, 13, 14, 15, 16 and 17
relate to alleged errors on the part of the court in the reception of
evidence from the State relative to the witness Willingham, and to
the exclusion of certain evidence offered by the defendant in support
of said witness. It is not at all probable that the question will arise
in the same form again and for this reason we do not take the time
here to consider it.

For the reasons heretofore pointed out the judgment must be re-
versed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

June 27, 1924.

HAWKINS, JUDGE.—In its motion for rehearing the State, through
the district attorney who prosecuted this case, seriously contends (as
it did upon orginal submission) that the statement made by deceased
a few minutes before the homicide was *res gestae* and, therefore, ad-
missible. We think counsel in his zeal has lost sight of the distinction
very clearly pointed out in Judge Henderson's opinion in Wooley v.
State, (Texas Crim. Rep.), 64 S. W. Rep., 1054. There, the theory of
the State was that defendant lay in wait for deceased in some woods
on the Wooley farm, and shot deceased on account of previous ill-
feeling. Accused defended on the ground that he killed in self-defense,
and accounted for his presence in the woods at the particular time as
having gone there to shoot a hawk; that deceased was at an unusual
and unexpected place, and began the attack. Over the defendant's
objection, the State was permitted to prove by two witnesses that just
before the homicide deceased stated in their presence what his pur-
pose was in going to the place where the homicide occurred. It was
admitted as being *res gestae*. After discussing the matter at some
length Judge Henderson said:

"It is true, the testimony is res gestae of deceased's act; that is,
his verbal act in connection with and explaining his conduct in being

on the Wooley farm. But res gestae is not always admissible, especially where it makes proof of a fact that is bound to materially affect a defendant, and he has no notice or knowledge of such fact."

Being confirmed in our views that our former disposition of this case was correct, the State's motion for rehearing is overruled.

*Overruled.*