## W. R. NEWTON v. THE STATE.

No. 22679. Delivered March 15, 1944.
Rehearing Denied June 14, 1944.

The opinion states the case.

*J. Alton York,* of Bryan, *T. Wade Potter,* of Littlefield, *E. A. Camp,* of Rockdale, *E. B. Camp,* of Cameron, and *R. M. Lyles,* of Angleton, for appellant.

*Harold M. Lafont,* District Attorney, of Plainview, *E. A. Bills,* of Littlefield, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was assessed a penalty of seven years upon his conviction of the charge of assault to murder.

The prosecuting witness, Dr. Roy Hunt, and appellant had been acquainted with each other while students in medical college at Galveston. Appellant completed his course a year in advance of Dr. Hunt and took an internship at a hospital in Houston. During the following year, Dr. Hunt served an internship in the same hospital. At the hospital each became acquainted with Miss Ruth Nichols, a nurse who married appellant. This marriage took place on April 16th, 1935. According to the evidence of Dr. Hunt, she confided in him the fact of her marriage to Dr. Newton on the date of her resignation from the hospital. Dr. Hunt had associated with her frequently before this information came to him. Dr. Hunt later married and went to Littlefield to practice his profession while Dr. Newton had located in his home town of Cameron in Milam County and engaged in the practice of medicine. The internships were served in 1934 and 1935 respectively. No particular friendship existed between the two and no conflict had occurred. Littlefield and Cameron are something like four hundred miles apart and the parties had no communication with or from each other, directly or indirectly, during the period of time after their school days. So far as the record shows, Dr. Hunt and Mrs. Newton had had no communication and they had not seen each other since she left the hospital following a visit after her resignation in 1935.

During the evening of May 20th, 1942, Dr. Hunt had three telephone calls from a lady, giving her name as Mrs. Ruth Newton. The first call was at eight-thirty, the second at ten-thirty and the third at about twelve o'clock. The contents of these conversations are not in the record nor do we mean to suggest that they should have been offered. Neither is it shown whether or not the first two calls were local or long distance. During that evening, Dr. and Mrs. Hunt were entertaining some friends. When the third call was made at about twelve o'clock he told his wife and the friends who called him. The State was permitted over objections to introduce these visitors and Mrs. Hunt as witnesses, all of whom testified that Dr. Hunt at that time told them who was calling. Several bills of exception complain of this evidence and will be hereafter discussed.

Dr. Hunt testified that in answer to the call he went out on the highway in the direction of Lubbock to the point designated and there found a car on the right hand side of the road

headed in the direction of Lubbock, with the parking lights on. He approached the car and addressed the lady at the wheel, calling her Ruth and remarking on the length of time since he had seen her. He was within a foot of her and was positive as to her voice and general appearance. He also identified her by her voice in the three telephone conversations. She asked him to come around and get into the car, saying she wanted to talk to him and that it would only take about two mintues. As he walked in front of the car and toward the right side, the lights were flashed on him in full force. He heard a noise in a ditch by the side of the road and upon looking, saw a man approaching him from the rear of the car whom he recognized as Dr. Newton. After a brief statement, Newton began shooting. The victim fell but managed to get up and make his escape by hiding in a furrow in the dark a short distance away. He described an apparent search for him which failed to reveal his whereabouts, after which the car drove off in the direction of Lubbock. This was between twelve and one o'clock at night on the morning of May 21st. He succeeded in getting to his car and drove back to Littlefield where he was operated on that night and survived wounds that were described as exceedingly dangerous. His statements identifying appellant and his wife were positive and unequivocal. Other witnesses identified the wife as the party who made a telephone call from a service station at about twelve o'clock on the night of the shooting.

Appellant's defense was that of an alibi. A large number of witnesses from his home town of Cameron testified to his good reputation and that they had seen him late in the afternoon of May 20th in Cameron at an hour making it impossible for him to reach Littlefield at twelve o'clock that night. Testifying in his own behalf, appellant denied his presence and denied that he was the person that shot Dr. Hunt and related a story of his leaving Cameron between five-thirty and six o'clock for a business trip to Houston where he spent the night. The Sheriff and the Sheriff's wife from Caldwell testified that both appellant and his wife were in Caldwell at a late hour on their way to Houston. A telephone call from officers at Littlefield to the officers at Cameron early May 21st, caused a search to be instituted for appellant and he and his wife were located in Houston at about eleven o'clock in the forenoon and taken into custody at about one o'clock in the afternoon and returned to Cameron and there delivered to the Sheriff from Littlefield.

If the State's evidence is to be relied upon and Dr. Hunt was in fact able to and did identify either Mrs. Newton or Dr.

Newton, then the evidence produced by Dr. Newton on his alibi can not be true. Conversely, if he was at the places at the times stated by any of his witnesses he could not have been at Littlefield at the time of the assault. A sharp issue is directly drawn as to whether or not Dr. Hunt, however sincere in his belief, was in fact correct in identifying the parties as Dr. and Mrs. Newton. This is the real issue in the case. No denial is made of the fact that someone called him as related, representing herself to be Ruth Newton or that Dr. Hunt went to the place of the assault so believing. It, therefore, appears that the evidence given by the guests in Dr. Hunt's home to the effect that Dr. Hunt told them who called him became of extreme importance, not merely to corroborate Dr. Hunt in his testimony that he received a call, but also on the question of the identification of Mrs. Newton as the party who called him. The issue is as to whether or not she was in fact the party she represented herself to be. The question of law here presented is upon the admissibility of the testimony reflected by the bills and must be considered in the light of the issue before the court.

The bills relating to the testimony of each of the several witnesses are identical, at least in substance. We quote the question contained in Bill of Exception No. Nine, addressed to Mrs. Hunt: "State whether or not Dr. Hunt immediately upon hanging up the receiver of the telephone told you and the others present who called." The answer was: "He did." A similar question with the same answer is found in each bill taken to the witnesses testifying on the subject. These bills have given us much concern and it is our opinion that they reflect error. In the brief filed in behalf of the State by the district attorney we find no authorities cited supporting the contention that this testimony is admissible as res gestae statement. The brief says: "It was certainly permissible to prove by the State's witnesses that Ruth Newton was in Littlefield the night of the shooting." This will be conceded but the question is whether or not the evidence received is proper for that purpose. A conversation had between Dr. Hunt and his guests in the absence of appellant could ordinarily bear no relationship to the guilt or innocence of appellant. Admittedly, the witnesses could not have been permitted to detail the things which Dr. Hunt said to them concerning the matter. This is so well recognized that citation of authorities would hardly seem necessary. From the State's brief we copy the following as grounds and explanation for the contention that the evidence is admissible: "The testimony of the witnesses Henry, Mrs. Roy E. Hunt, Dr. Janes and Broome is that after Roy E. Hunt talked over the telephone he told them whom he

talked to. Now these witnesses did not tell the jury who Roy E. Hunt told them he talked with but merely stated to the jury that Hunt did tell them the name of the person with whom he talked without the witnesses repeating the name to the jury. There was no damage."

We hardly think that the question and answer considered with the record could be given the construction for which the State contends. They had as well have told the jury that Dr. Hunt told them that Mrs. Newton called and wanted to see him as to have said: "He did." In view of the question and of the answer in connection with the testimony which Dr. Hunt had given, it could have no other meaning to the jury, and presented to them that he at that time identified Mrs. Newton over the telephone just as he testified on the witness stand that he did. If the party making the call were some other person representing herself to be Mrs. Newton and had successfully created the impression on Dr. Hunt that she was Ruth Newton, the things would have occurred in the Hunt home in the same way they would have had it in fact been Mrs. Newton. While the evidence was exceedingly damaging on the real issue in the case, it can not be properly accepted for the purpose and effect which it in reality had. The doctrine of res gestae is clearly not applicable. See Branch's Ann. P. C. Secs. 92, 100 and 107.

The real question of law here is whether or not this is a case in which the State may bolster its witness by proving prior statements consistent with evidence given on the witness stand. If the evidence had no such effect and if the State did not intend for it to have that purpose, it would become a meaningless procedure. Certainly, the State did not intend to convey to the mind of the jury that Dr. Hunt gave some other name than Mrs. Newton to the witnesses for this would be to impeach their own witness by showing contradictory statements, and there is no conceivable purpose which the evidence could have been intended to fullfill other than that of corroborating Dr. Hunt. The rule on this subject is clearly laid down in 18 Tex. Jur., page 132, Sec. 64, from which we quote the following: "Unless it appears that a witness has been impeached by statements contradictory to those given by him in evidence a consistent and confirmatory statement made to a third person out of the presence of the accused is hearsay and inadmissible. In other words a witness cannot corroborate his testimony by proof of having made similar statements in harmony with his testimony on the trial, if the witness has not been attacked on the statements sought to be supported." There is no lack of authority in our

own courts for this pronouncement. Neither are we at a loss for support in the position that a mere denial of the correctness of the opinion that he was talking to Mrs. Newton will not authorize the admission of prior statements to bolster the witness.

Harvey v. State, 53 S. W. 102: Harvey was convicted of the offense of seduction. The prosecuting witness detailed the agreement of marriage as a basis for the prosecution and then was permitted to testify "that she had told of her engagement to marry appellant to others." The trial court did not permit the witness to give the names of the people to whom she had given this information. On the theory that it was testimony tending to corroborate the evidence which the witness was then giving before the jury, this court held that the admission of the evidence was error and because of it, reversed the case.

Green v. State, 110 S. W. 929, 53 T. C. R. 534: Green was prosecuted for illegal sale of liquor. The prosecuting witness was permitted to testify that two months after he purchased a quart of whisky from appellant he went before a court of inquiry held at Brownwood and there testified that he had purchased this quart of whisky from the accused; that he told the facts just as he had testified before the jury in a trial of this case and at previous trials and that the date given was the same each time and was, therefore, correct. The issue in the case was raised on the uncertainty of the date. We quote from the opinion as follows: "* * * * even if necessary to fix the date, which seems was not the case, it was certainly not proper that he should corroborate his testimony or seek to bolster it up by stating that his testimony before the court of inquiry was the same as in this case. There had been no such character of impeachment, or attempted impeachment such as would justify this character of corroborative or sustaining evidence. See Holmes v. State, 52 Texas Crim. Rep., 353; 106 S. W. Rep., 1160; Pride v. State, 52 Texas Crim. Rep., 441; 107 S. W. Rep., 819; McKnight v. State, 50 Texas Crim. Rep., 252; 95 S. W. Rep., 1056; Davis v. State, 77 S. W. Rep., 451, and collated cases."

Dorman v. State, 141 S. W. 526; 64 T. C. R., 104; This case is strikingly similar to the preceding one. The following quotation from the opinion will be understood without extended preliminary statements: "As hereinbefore stated, this testimony was introduced by the State on its direct examination of the witnesses, and, of course, was inadmissible at the time, as the

State can not support its witness by proving his statement at other times and places, until the defendant seeks to impeach the witness by showing contradictory statements, or in some other manner. This the defendant had not sought to do * * * * *. He simply denied the sale as did his witnesses. This does not give the State the right to support a witness * * * * *."

Wilson v. State, 11 S. W. (2d) 803: Wilson was charged with robbery by firearms. The scene was in the University Bank in Austin and' the testimony under question was given by Miss Potts who identified the accused as the party who committed the robbery. On re-direct examination she was permitted to testify, over objection, that she had looked through and examined some two hundred or more pictures which were shown to her by officers and that in addition thereto, she examined two pictures of appellant exhibited by said officers and identified appellant's picture as being one of the men who robbed the bank and whom she saw leaving the bank and entering an automobile. It was the contention that this evidence was warranted by reason of the cross-examination given her by appellant. The opinion says: "It is the well-settled rule in Texas that, if it has been shown that a witness has made out of court statements contradictory to those testified to on the trial, it is then permissible to prove that such witness has made other statements out of court which are consistent with and confirmatory of his testimony on the trial. Gallagher v. State, 28 Tex. App. 247; 12 S. W. 1087; Taylor v. State, 87 Tex. Cr. R. 330, 221 S. W. 611; Branch's P. C. p. 112. However, unless it appears that a witness has been impeached by proof of statements contradictory to those given by him in evidence, a consistent and confirmatory statement made to a third party out of the presence of appellant is hearsay and inadmissible. Holmes v. State, 52 Tex. Cr. R. 353, 106 S. W. 1160; Pridemore v. State, 53 Tex. Cr. R. 623, 111 S. W. 155; Pryor v. State, 40 Tex. Cr. R. 643, 51 S. W. 375. In the instant case the witness was vigorously cross-examined in an effort to show she was mistaken as to her identity, but no statements contradictory to those testified to by her had been introduced."

It was the conclusion that the evidence of Miss Potts "may have been regarded by the jury as of great probative force." It was held to be hearsay and its admission required a reversal of the case. The opinion then observes that in some jurisdictions such statements would not be admissible under any circumstances. Texas has adopted a rule consistent with the foregoing discussion but this court has repeatedly declined to extend the rule beyond the limitations herein discussed.

With commendable diligence in an effort to prosecute the perpetrator of a dastardly crime, the State has presented this evidence with the intention and under conditions which indicate that it was forceful in behalf of the prosecution, in that it was confirmatory of the evidence of Dr. Hunt as he related it to the jury. It is our opinion that the evidence is not proper for the purpose and that its admission calls for a reversal of the case.

When the case was called for trial, appellant presented a motion for a continuance, the merits of which are not discussed even though great insistence was had before this court on its sufficiency. Exception was taken to the action of the trial court in overruling this motion but it is not brought before this court with a bill of exception which would enable us to consider it. A full discussion of our reason for the position that an order overruling a motion for continuance can not serve as a bill of exception even when so denominated by the Judge, is found in Caldwell v. State, 103 S. W. (2d) 758 and authorities there cited. See also Branch's Ann. P. C., Sec. 304 and authorities there cited.

A great many exceptions were lodged against the court's charge. We have carefully examined these and find no error. Nothing is presented in a way which would call for discussion on the questions of law sought to be raised.

For the error pointed out the judgment of the trial court is reversed and the cause remanded.

ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

The State has filed a motion for rehearing insisting that we were in error in our original opinion, relying upon the following cases: Parker v. State, 91 Tex. Cr. R. 68, 238 S. W. 943; Porter v. State, 86 Tex. Cr. R. 23, 215 S. W. 201; Williams v. State, 112 Tex. Cr. R. 482, 17 S. W. (2d) 1057; Upton v. State, 48 Tex. Cr. R. 289, 88 S. W. 212; Chance v. State, 125 Tex. Cr. R. 318, 68 S. W. (2d) 212; Welch v. State, 143 Tex. Cr. R. 529, 154 S. W. (2d) 248. We also include Bazanno v. State, 60 Tex. Cr. R. 507, 132 S. W. 777; Archer v. State, 98 Tex. Cr. R. 91, 263 S. W. 305.

The evidence complained of in Welch's case was res gestae of the "litigated act" which was a kidnapping, and made by the victim while still confined and under control of the kid-

napper. An examination of the other cases mentioned will disclose that the evidence complained of was admitted under the rule that where a person does any act material to be understood his declaration or explanation of the act made at the time of doing the act expressive of its character, motive or object is regarded as a verbal act indicating a present purpose and intention, and is admissible unless the declaration or explanation impinges upon an issue of self defense asserted by accused where he acts as the situation appears to him as viewed from his standpoint, and the declaration or explanation in question is unknown to him. The declaration so made is sometime referred to in the opinion as "res gestae" of the act, and sometime as merely explanatory of the act, but in the cases mentioned the act in question is testified to by the witness who relates the explanation. Therein, we think, lies the distinction between the present case and those upon which the State relies. If Dr. Hunt had told his wife and guests that he was going out upon the road to meet Mrs. Newton in response to a telephone request from her the point would seem to have been covered by the cited cases. However, we are bound by the recitals in the bills as to what occurred. None of the witnesses, according to the bills, related any such explanation by Dr. Hunt as accounting for his leaving the house, but stated only that he told those present who was calling over the telephone. Dr. Hunt testified that he went to the place of the shooting in response to a telephone call from Mrs. Newton, but nowhere in his testimony do we find that he ever explained to his wife or guests present that he was going out to meet Mrs. Newton.

Under the circumstances disclosed by the bills we think our original opinion properly disposed of the case.

The State's motion for rehearing is overruled.