PETE BARNETT V. THE STATE.

No. 22044.  Delivered April 1, 1942.
Rehearing Denied June 3, 1942.

The opinion states the case.

*Thomas & Thomas,* of Big Spring, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was assessed a penalty of fifty years in the penitentiary by a jury in the District Court of Ward County on a charge of murder. The offense is alleged to have been committed in Winkler County where the indictment was originally returned and a previous trial was had in that county, which resulted in a conviction. The District Judge granted a new trial and transferred the case to Ward County.

It is alleged in the indictment that the appellant killed Charlie Watson on the 10th day of December, 1940, by striking him with a blunt instrument, the exact nature of which was to the grand jury unknown. The evidence shows that deceased was employed by an oil company in some capacity in the operation of its oil property. On the evening of December 10th appellant and deceased, together with appellant's brother-in-law, J. C. Jackson, were in a drink or eating place in a nearby town, at which time appellant was under the influence of intoxicating drink to some extent. The proprietor of the place noticed that he was talking loud, that his language was not carefully selected for public expression, and suggested to the deceased that somebody should take him home. This appears to be the extent of the evidence on that subject so far as we can ascertain from the record. Appellant and deceased left the place of business to-

gether and were not seen until the next morning. At about 7:45 o'clock the next morning another employee of the company going on one of the leases, discovered Watson near his car which had been run into a ditch and saw that there was blood in the car, the interior of which showed evidence of a struggle; that there was much blood about Watson's body and evidence of a number of minor injuries, together with one wound on the upper part of the head which resulted in his death a few minutes after he was discovered and before he reached the hospital.

Appellant appeared at his home in the morning in a bloody condition with some minor bruises and reported to his wife that he had a fight and had probably killed a man. Soon thereafter he went in search of his victim, apparently being uncertain as to whether or not he had died. As he did so the officers who had been notified of the homicide were on the ground and began their investigation. Appellant still had blood on his clothing and admitted to the Justice of the Peace that his clothes were very bloody. The appellant did not testify in the case and the chief evidence offered by him is the fact that he had never been convicted of a felony in this State or any other state, which was in support of his application for a suspended sentence.

Reliance is had for reversal of the case on three bills of exception, together with some exceptions to the charge of the court by which it is contended that the court committed an error in permitting the State to place in evidence the testimony of J. C. Jackson given on a former trial; that he failed to instruct the jury as to aggravated assault; that he failed to instruct the jury on the law of temporary insanity induced by intoxicating liquor in mitigation of the punishment; that the State committed reversible error in cross examining the wife of defendant and that the court should have declared a mistrial after the State had cross examined the wife of the defendant on matters irrevelant to the direct examination after the court had withdrawn the same from the jury and instructed them not to consider it. We have considered the merits of each question and are of the opinion that no reversible error is shown.

Appellant, in addition to a very able oral argument in his behalf, presents a well prepared and exhaustive brief on the

foregoing subjects. The principal emphasis seems to be placed on the first bill which complains of the reproduction of the testimony of J. C. Jackson from the former trial. Admittedly, proper predicate was laid for the introduction of this testimony in evidence and the objection goes to the substance of his testimony. It appears that Jackson, a brother-in-law of appellant, had testified before the grand jury investigating the case and had given a statement in writing, sworn to, which was in the possession of the prosecuting attorney, in each of which instances it is shown that he had made the statement that he was present when appellant returned home and reported to his wife that he had a fight and thought he had killed a man. When placed on the witness stand by the State, however, this witness could not remember the things he had stated on the two previous occasions. Assuming that he was unfriendly, the prosecuting attorney began to interrogate him concerning his previous statements, either for the purpose of impeachment or of refreshing his memory. This would call for quite a different consideration were it not for the fact that after the court had overruled the objection to the State's examination of the witness the defense took him for cross-examination. This, it will be conceded, they had a right to do insofar as the questions which had been answered involved him, and this without waiving their objection. However, the defense went further. After asking him questions about the statements which he had given and bringing out a positive denial of some of the things that were attributed to him, the defense attorney asked him:

"Q. * * * do you remember what Charlie did or didn't say that morning? A. That morning.

"Q. Yes, I mean Pete. Pardon me. A. Well, my sister asked him what was the matter when he came in, and he said he had had a fight and that he had killed a man, and then he said he didn't know whether he killed Charlie or not, that he was going back there and see."

Thus, it will be seen that the real harmful, all-embracing statement was brought out by the independent examination of the witness by appellant's counsel. If he has complaint to make of the harmful effect of any examination of the witness by the State, it is over-shadowed by this statement. Furthermore, this cross-examination does not seem to be induced, nor are the answers influenced, by the action of the State's attorney. No intimidation which might have resulted from the reference

made to his written statement and to his evidence before the grand jury could reasonably be said to have produced this answer. The witness was only asked if he remembered what the defendant said and he replied by detailing it, which was more than responsive to the question directed to him. However, there is no objection lodged against the testimony because of his action in doing so. If the memory of the witness was bad while being examined by the State, and if the reference to the written statement and former evidence failed to refresh his memory, something else did and we are unable to charge the State with error because of it. Apparently he was responding to the new examination by appellant's attorney independently of what had been asked, or said to him, by the District Attorney.

A further complaint presented on the appeal is because the court failed to instruct the jury on the law of temporary insanity induced by intoxicating liquor as a mitigation of the punishment. Quite a number of authorities are presented with great force by the very excellent brief in the case, but it is evident that the Act of the Forty Sixth Legislature, 1939, page 224, Sec. 1, amending Article 36 of the Penal Code, has been overlooked. Furthermore, we do not believe that the evidence was sufficient to raise the issue even under the old article and under the holding in Bearrow v. State, 118 S. W. (2d) 594. Under very similar circumstances from which the court concluded that there was no testimony showing that the appellant had imbibed intoxicating liquor to the extent that he was temporarily insane, this court held that the trial court had applied the law of murder with and without malice, stating in each case that unless they found from the evidence beyond a reasonable doubt that the defendant at the time of the homicide entertained the specific intent to kill the deceased, that they should acquit him. Such charge was held to be sufficient. There is no evidence in the present case to show that he was drunk to the extent sufficient to indicate temporary insanity. We do not think that so much can be presumed from the amount of whiskey and beer which the evidence shows that he drank, nor from any other circumstance of the case.

As was also said in the Bearrow case, it was not necessary to show that appellant committed the offense by the use of a deadly weapon. The question of intent determines the question of malice. Since the jury found that he was guilty of murder with malice, they must have found that he entertained the

specific intent to kill. (Bearrow v. State, supra, and the authorities there cited.)

The next two complaints will be considered as one. Appellant's wife voluntarily took the witness stand in his behalf and answered questions to the effect that he had never been convicted of a felony in this State or any other state. She also told of their family of children. On cross-examination she was asked the following question, to which she gave the answers stated:

"Q. You were at your house the morning that Pete came in on the morning that he was arrested and that Charlie Watson was found? A. Yes, sir.

"Q. When he first came in that morning did he have on boots? A. Yes, sir."

The bill recites that objection was made to the last question and answer; that the court sustained the objection and instructed the jury not to consider the same. Contention is made, however, that the harmful effect of this question and answer under the facts of the case was such that it could not be removed by the instruction and that the court should have granted the defendant's motion to declare a mistrial. The writer is not in sympathy with any effort of the State to induce a witness to give testimony against the spouse which goes beyond the field of the direct examination, our reasons and authority being more definitely expressed than need be given here in the case of Smith v. State, 150 S. W. (2d) 388. However, as admitted by the bill of exception, the evidence which the spouse is induced to give must have some harmful effect before this court would be warranted in reversing the case. From examination of the evidence produced by the State detailing the injuries to the deceased, we are unable to see that the statement made that he had on boots would corroborate any of the evidence or make that which was given more damaging. Dr. McClure did not state that the injuries, or any of them, were inflicted by the heel of a boot. He described the wounds and then said they could have been inflicted by a rock, a stick or a heel of a boot. He merely describes it as being of that nature and does not attempt to say that such was true. It cannot be so construed. The fact that appellant had on boots would be no more damaging than to say that he had on shoes. Hence, the damaging effect of this testimony was entirely lost. Had there been iden-

tifying characteristics on the boot indicating that they had caused the injury described, a different question would be presented for our consideration. It occurs to us that the cautious trial judge properly and effectively handled the mistake which the prosecuting attorney was about to make.

Finding no error in the record, the judgment of the trial court is affirmed.

ON MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant insists that he was entitled to have the issue of aggravated assault submitted to the jury. A proper and timely exception was reserved to the court's charge upon the subject.

Under a charge of murder, the issue of aggravated assault is raised when the instrument with which the murder is inflicted is not a deadly weapon per se or one which, in the manner of its use, is not ordinarily calculated to produce death, and when, in addition thereto, the evidence raises the issue of a lack of intent on the part of the accused to kill. Miller v. State, 13 S. W. (2d) 865, 112 Tex. Cr. R. 125; Bookman v. State, 16 S. W. (2d) 123, 112 Tex. Cr. R. 233; Johnson v. State, 68 S. W. (2d) 202, 125 Tex. Cr. R. 381.

Appellant insists that the evidence shows that the injury causing the death was not inflicted with a deadly weapon per se; that there was a lack of intent on his part to kill; and that, therefore, this case comes within the rule stated and a charge on aggravated assault was called for. A determination of this contention is deemed neither necessary nor called for, because we have reached the conclusion that the charge as given was more favorable to appellant than that which he requested. As sustaining this conclusion, we note that the jury was instructed as follows:

"Unless you find from the evidence beyond a reasonable doubt that the defendant, Pete Barnett, did so voluntarily, and with intent so to do, kill the deceased, Charlie Watson, you will find the defendant not guilty."

The term "voluntarily" was defined as follows:

"By the term 'voluntarily,' as used in the definition of 'murder,' and in these instructions, is meant that the act must be done by the exercise of one's own free will. A voluntary act, therefore, is one that proceeds from one's own free will and is done by choice and upon one's own initiative."

When these charges are considered together, it appears that the jury was instructed to acquit appellant unless it believed that he intended, by exercising his own free will, to kill the deceased; and this without reference to malice or to the character of the instrument used in effecting the killing.

A charge on aggravated assault would have embraced the same facts and would have authorized appellant's conviction of that offense. Hence the charge as given was more favorable to the appellant then that which he requested, because, under the charge as given, he was entitled to be acquitted, while under the law of aggravated assault, he would have been guilty of that offense.

After a re-examination of the record in this case, we remain unable to agree with appellant that the facts are sufficient to call for an application of the provisions of Art. 36, P. C., relative to temporary insanity produced by the voluntary use of intoxicants, in mitigation of punishment for an offense.

It must be remembered that, under the above statute as amended in 1939, mere intoxication from the recent use of ardent spirits will not mitigate the penalty, and that the mitigation of penalty arises only when temporary insanity is produced by the use of such spirits. Adams v. State, 144 S. W. (2d) 889, 140 Tex. Cr. R. 319.

The most favorable interpretation of the facts, from appellant's viewpoint, shows only that he was drinking intoxicants some hours prior to the homicide. There is an absence of any proof as to his condition at the time of the homicide or that it was at any time such as to show that he was in a state of temporary insanity produced by the use of intoxicants.

We remain convinced of the correctness of our conclusion that reversible error is not reflected by the cross-examination of appellant's wife, touching a matter not inquired about upon her examination in chief, notwithstanding the prompt with-

drawal of the matter from the jury's consideration by the trial court. In addition to what we originally said touching this matter, attention is called to the fact that the undisputed evidence shows that the deceased came to his death as the result of an injury inflicted upon his head with a blunt instrument of some character. The only injuries to deceased which might have been inflicted by a boot or boot heels were upon the body. The doctor who made the examination of deceased, and who performed an autopsy, testified that the body injuries so found did not cause, and were not sufficient to cause, deceased's death.

Believing the case was correctly disposed of originally, appellant's motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.