Henry D. BURTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 41544.

Court of Criminal Appeals of Texas.

May 21, 1969.

Rehearing Denied July 9, 1969.

OPINION

Ben L. Sturgeon, Pampa, for appellant.

Bill W. Waters, Dist. Atty., Pampa, and Jim D. Vollers, State's Atty., Austin, for the State.

DOUGLAS, Judge.

The conviction is for robbery; the punishment, ninety-nine years.

The indictment charged Henry D. Burton and Zane Leonard Evans with robbery by using and exhibiting a firearm. A severance was granted and Burton, the appellant, was tried first. The court charged the jury on robbery by assault, omitting the capital feature of the case.

The record reflects that an Ideal Food Store in Pampa was robbed of three hundred one dollar bills a little after two o'clock on Saturday afternoon, June 18, 1966, by a man wearing a dark sport hat and a dark colored sport coat; that the robber and another left the store in a white Dodge Dart automobile.

In the first two grounds of error the sufficiency of the evidence is challenged. Peggy Ryan testified that she was a long-time friend of Burton; that she, with her three-year-old daughter, had brought Zane Leonard Evans and Burton from Oklahoma to Pampa in her 1963 Oldsmobile; that all of them stayed at the Plainsman Motel in Pampa one or two days prior to the robbery; that she, Burton and Evans rented an apartment (at Legg's Apartment House) the day before the robbery, and also on that same day, she, her daughter and Evans went to a park (Hobart Street Park) just south of a railroad track immediately adjacent to a railroad bridge. Shortly after noon on the day of the robbery she drove Evans and Burton in her car to downtown Pampa on Main Street and let them out where they were to see about a job. Evans told her to go to the park and wait for them. About an hour later Evans and Burton came up to her car which was near the railroad bridge in the park. · They left the park, checked out of the Plainsman Motel within just a few minutes, went to the apartment and all four of them were in the car ready to leave for Clinton, Oklahoma when the officers arrived. At this time both Evans and Burton were intoxi-

cated. When Burton got out of her car, one dollar bills fell out of his shirt. Peggy Ryan gave the officers permission to search the car. She testified that there was a "bunch" of one dollar bills in the car; that Burton told the officers that the baby had taken money out of her purse and it belonged to her, but in fact the money did not belong to her.

Peggy Ryan further testified that the officers took the gun that belonged to her from Burton. She had left it in the glove compartment and did not know that Burton had it. A picnic icebox containing a hat and milk for her baby was in the front of the car. Burton asked her if she did not want to take the baby's milk inside, and then he told her, " * * * get rid of the hat." She then took the icebox to the apartment and threw the hat (State's Exhibit No. 1) behind the refrigerator.

The testimony shows that a white 1964 Dodge Dart automobile belonging to R. L. Johnson was parked at about 1:20 o'clock in the afternoon on the date of the robbery. It was found to be missing about an hour later. Sometime after three o'clock the same day the stolen Dodge Dart was found abandoned on a dead-end street which ended at the railroad track at the Hobart Street Park. Shoe and boot tracks leading from the abandoned car toward the park were found. The ground was muddy near the bridge at the park, but it was dry elsewhere. The shoes of Evans and the boots of Burton appeared to have been recently washed at the time they were apprehended, but the shoes still had some mud on them. Good plaster of paris molds were made of the tracks. The names on the heels of the shoes and boots of Evans and Burton were identical to those in the molds. The molds, boots and shoes were introduced into evidence. In the opinion of trained officers, the imprints preserved by the molds were made by the boots and shoes worn by Evans and Burton at the time they were apprehended.

Larry Blair testified that he was assistant manager of the food store; that he was robbed of some three hundred one dollar bills by a man who exhibited a gun and who was wearing a dark sport coat and a darker sport straw hat, and that the robber and another man were seen leaving the store driving a white Dodge Dart. When Blair was asked if State's Exhibit No. 2 was the coat worn by the robber, he answered: "Yes, Sir, no doubt that is the coat." He stated that the hat (State's Exhibit No. 1) was very much similar to the one worn by the robber. He testified that Evans was the man who robbed him and identified him in the courtroom.

Ranger Bill Baten testified that he went to the Legg Apartments between three-thirty and four o'clock the day of the robbery and saw Peggy Ryan, her baby, Evans and Burton; that as Burton got out of the car his shirt tail came out and one dollar bills started blowing all over the place. Some more bills were taken from the side of his shirt, from his pockets and from the seat of the car. Two hundred eighty-nine one dollar bills were found in Burton's billfold, on the car seat, in his shirt and on the ground where they had fallen. A total of three hundred nine one dollar bills were taken from Burton and Evans. Burton told the officers that he got the money gambling. While at the scene Baten asked Peggy Ryan if she had a pistol, and Burton volunteered, "I have the pistol in my pocket." The pistol was taken from him by the officers and was introduced into evidence. During the search of Peggy Ryan's car, a dark sport coat (State's Exhibit No. 2) was found in Evans' suitcase. The straw hat (State's Exhibit No. 1), with the brand name and all identification cut out of the inside band, was found behind the refrigerator in the apartment where Peggy Ryan told the officers it would be. It was also shown that some .22 caliber bullets were found in the commode or in the water tank of the commode in the apartment.

E. M. Stafford testified that he was the manager of the Plainsman Motel; that Evans and the group stayed at the motel

for two nights before the robbery; that Evans and the woman (Peggy Ryan) checked out of the motel about an hour after he had been called by the officers about the robbery; that Evans and the woman appeared to be nervous and were in a hurry; that Evans said that he did not have the money but would pay him in a day or two.

Esther M. Legg testified that on June 17, 1966, the day before the robbery, she rented an apartment to Evans who said that the woman and baby were his wife and child. He gave the name of James L. Scott when he registered.

■ The court submitted the case on circumstantial evidence. The evidence was sufficient to support the conviction.

■ Complaint is made in the third ground of error that the court committed fundamental error in charging that the testimony to corroborate the accomplice witness, Peggy Ryan, need only tend to connect the defendant to the crime charged. The instruction in substance was that if the jury found that Peggy Ryan was an accomplice, and if they found that a crime had been committed, they could not convict Burton on the testimony of Peggy Ryan unless they believed her testimony to be true; and then they could not convict the defendant "unless you further believe that there is other evidence in this case, outside the evidence of said Peggy Ryan, tending to connect the defendant with the commission of the offense charged in the indictment and then from all the evidence you must believe beyond a reasonable doubt that the defendant is guilty."

No objection was made to the charge; no error is shown.

If such an objection to the charge had been made, no error would be shown. The charge given follows the language of Art. 38.14, Vernon's Ann.C.C.P.:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; * * *"

Hoover v. State, Tex.Cr.App., 390 S.W. 2d 758, holds that it was not error to refuse an instruction that would increase the burden on the State beyond that part of the statutory requirement "tending to connect the defendant with the offense committed." See 2 Branch's Ann.P.C. 36, Secs. 738, 739.

The third ground of error is overruled.

■ It is contended in the fourth ground of error that reversible error was committed, because Evans was forced to place State's Exhibit No. 1 (the hat found behind the refrigerator) and State's Exhibit No. 2 (the coat found in Evans' suitcase) on his person in the presence of the jury for identification purposes.

The record does not support this contention. In the absence of the jury, Mr. Waters, the District Attorney, asked Evans to put on the hat and coat. Mr. Bowers, Burton's counsel, objected. The court, at the request of Mr. Waters, asked Evans if he objected. Evans objected and the State withdrew the request.

■ In Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, cited in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and relied upon by appellant, the Supreme Court of the United States held it was not error to compel one to put on a blouse and for a witness to testify that it fit him. If a person who is forced to put on a blouse cannot complain, then it follows that his co-indictee cannot complain.

The fourth ground of error is overruled.

The fifth ground of error is as follows:

"The Trial Court committed fundamental error in requiring the appellant's co-defendant, Zane Leonard Evans, to appear in a lineup by himself with State's Exhibit No. One and Two (the hat and coat) on his person, and then having the

State's main witness identify him as the robber and testify to such facts."

Appellant cites United States v. Wade, supra, and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, which hold that one under indictment is entitled to his counsel at a lineup, as authority for his contention that Burton's constitutional rights were violated. In his brief, appellant complains that Evans was brought in the courtroom and required to put on the hat and coat. As heretofore stated in ground of error number four, the record shows otherwise.

The record reflects that Mr. Waters, the District Attorney, was questioning the witness Blair concerning the identification of Evans and the following transpired:

"Q. All right. Since the robbery occurred, have you had occasion to view a man suspected of the robbery in the Sheriff's office?

"A. Yes.

"Q. Did you see him wearing the hat and coat, which you have identified here as being State's Exhibits 1 and 2, and without them?

"A. Right.

"Q. Are you able to state an opinion as to whether or not you could identify the man who committed the robbery?

"A. Yes, with the hat and coat on. I identified him as being the person.

" * * *

    *    *    *    *    *    *

"Q. Larry, can you point out in this courtroom the man whom you identified as the robber, when he had on this hat and coat identified as State's Exhibits 1 and 2?

"A. Yes, Sir.

"MR. BOWERS: I object to that, Your Honor, based on the identification issue."

The objection was overruled.

On cross-examination Blair testified that he had not positively identified Evans until he had put on the hat and coat, and that no one else was present with Evans at the time.

■ United States v. Wade, supra, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, setting forth the rules on in-court and lineup identifications, were decided by the Supreme Court of the United States on June 12, 1967. Stovall v. Denno, supra, held that rules of Wade and Gilbert were not to be applied retrospectively. The identification of Evans in the present case was made a year before the decisions in Wade and Gilbert (the case was tried in April of 1967; the record reached this court in 1969). Wade and Gilbert do not apply to Burton unless there was a violation of due process standards of fundamental fairness.

This is a case of first impression, but it is somewhat analogous to a claim of a constitutional right of a co-defendant by an accused in search and seizure cases.

In Granza and Ferrera v. United States, 377 F.2d 746 (5th Cir. 1967), cert. denied 389 U.S. 939, 88 S.Ct. 291, 19 L.Ed.2d 292, it was held that an accused did not have standing to claim a violation of the Fourth Amendment right of a co-conspirator. During a search of a room of a third co-conspirator, heroin, a memo pad on which was written Ferrera's room number and the telephone number of Texas State Hotel were found. It was contended that this and another search were illegal. The court stated: " * * * We do not inquire into the legality of these searches, because we hold that appellants (Granza and Ferrera) do not have standing to complain," and the opinion pointed out that the Supreme Court of the United States, in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), stated in broad terms, " * * * one must have been the victim of a search or seizure * * * as distinguished from one who claims prejudice only through the use of evidence gathered as a

consequence of a search or seizure directed at someone else."

It was noted in Granza and Ferrera that neither of the appellants had an interest at all in the premises, and that during the search neither was present.[1]

In Wong Sun v. United States, 371 U.S. 471, 492, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Supreme Court of the United States upheld the admission against Wong of narcotics seized from Yee, as a result of the illegal arrest of Toy.

■ There is no reason to apply a different rule when a Sixth Amendment right to counsel at a lineup is claimed from the rule when a Fourth Amendment right against unreasonable searches and seizures is claimed. It is not necessary to decide if the constitutional rights of Evans were violated, because Burton has no standing to complain.

Ground of error number five is overruled.

Fundamental error is urged as the sixth ground of error, because the court did not instruct the jury that they could consider drunkenness in mitigation of punishment.

■ There was no requested instruction or objection to the charge because it did not contain an instruction on drunkenness in mitigation. Nothing is presented for review. Art. 36.14, V.A.C.C.P.; Ashworth v. State, Tex.Cr.App., 418 S.W.2d 668.

■ If the matter had been raised during the trial and the trial court had refused to respond no reversible error would have been shown. Appellant did not testify during the guilt stage of the trial. There was no indication or hint of insanity during the trial. There was evidence that appellant was intoxicated when he was apprehended. Butcher v. State, 161 Tex.Cr.R. 169, 275 S. W.2d 672, holds that the voluntary use of intoxicating liquor will not authorize mitigation of punishment and that Art. 36, Vernon's Ann.P.C., applies only when the use of liquor has produced temporary insanity. No error is shown.

Ground of error number six is overruled.

■ Appellant next contends that reversible error was committed when the district attorney asked Shirley Nickols, a deputy sheriff, if he had heard the testimony of a previous witness, John Mann, and if it was true, and he replied that it was. The question asked Nickols was: "You have heard the testimony of John Mann with regard to your first observing the Oldsmobile automobile with the four occupants, two of whom were Henry D. Burton and Zane Leonard Evans, on June 18, 1966 and its location. Is that testimony correct in every respect?" and he answered, "It is exactly right." There was no objection to the question or the answer. The witness was available for cross-examination.

Appellant cites Newton v. State, 147 Tex. Cr.R. 400, 180 S.W.2d 946, which held that it was error to bolster a witness by proving prior consistent statements of a witness when he has not been impeached. This case is not in point. Neither Nickols nor Mann was being bolstered by a prior consistent statement. Appellant's counsel, at the trial, probably preferred to have this shorthand rendition rather than a repetition of the details before the jury.

Ground of error number seven is overruled.

In the final ground of error, appellant contends that the punishment of ninety-nine years is excessive. At the penalty stage of the trial, before the jury, appellant testified and the record shows that he had been convicted three times for burglary, twice in Oklahoma in 1929 and in 1946, and again in 1954 when he received a seven-year term in Nebraska. The Federal offenses for which he had been convicted were for the sale of liquor to Indians, and violating the internal revenue laws. His State mis-

1. See Armada v. United States, 319 F.2d 793 (5th Cir. 1963), cert. denied 376 U.S. 906, 84 S.Ct. 659, 11 L.Ed.2d 605, and United States v. Graham, 391 F.2d 439 (6th Cir. 1968), cert. denied 393 U.S. 941, 89 S.Ct. 307, 21 L.Ed.2d 278.

demeanor convictions were for violating the liquor laws and for throwing nails on a public highway.

The jury assessed the penalty which was within the statutory limit. Article 1408, V.A.P.C., provides a penalty of life or any term of years not less than five for the offense of robbery by assault. The penalty was not excessive. Blassingale v. State, Tex.Cr.App., 408 S.W.2d 115; Lambright v. State, 167 Tex.Cr.R. 96, 318 S.W. 2d 653.

The judgment is affirmed.