Ray NORWOOD, Appellant,

v.

The STATE of Texas, Appellee.

No. 45176.

Court of Criminal Appeals of Texas.

Oct. 11, 1972.

Rehearing Denied Dec. 6, 1972.

Harkness, Friedman & Kusin by Harry B. Friedman, Texarkana, for appellant.

Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

This is an appeal from a conviction for assault with intent to murder with malice. Punishment was assessed by the jury at seven (7) years.

The record reflects that appellant shot James Martin, Chief of Police of Wake Village, at the home of one Norma Jean Eddy during the early morning hours of July 23, 1969. Prior to the shooting, Mrs. Eddy had called Martin relative to trouble she had with appellant earlier in the evening. Martin went to the home of Mrs. Eddy where complaints were filed against appellant by Mrs. Eddy for simple assault, disturbing the peace, display of a prohibited weapon and obscene language. Upon Martin arresting appellant a short time thereafter, Martin complied with appellant's request to take him to Mrs. Eddy's house to "see if we couldn't work it out." The shooting occurred after their arrival at the home of Mrs. Eddy.

The sufficiency of the evidence is not challenged.

At the outset, appellant contends that the court was in error in denying his application for change of venue when the State failed to controvert said motion. In Wall v. State, 417 S.W.2d 59, cited by appellant, this Court said:

" . . . prior to the trial the appellant filed his motion to change venue *drafted in compliance with Article 31.03, V.A.C. C.P.*, and supported by affidavits. (emphasis supplied) The motion was overruled. The motion was uncontroverted by the State either in the form of an affidavit or by the presentation of any evidence justifying the denial of motion, and there was not a waiver by appellant of a controverting affidavit. Under such circumstances, the appellant was entitled to have the venue changed and the Court erred in failing to grant the motion. Cox v. State, 90 Tex.Cr.R. 106,

234 S.W. 72; Ross v. State, 93 Tex.Cr. R. 531, 248 S.W. 685; Burleson v. State, 131 Tex.Cr.R. 576, 100 S.W.2d 1019; 1 Branch's Ann.P.C.2d Ed. 356, Sec. 132."

■ In determining whether appellant's motion for change of venue was in compliance with Article 31.03, Vernon's Ann.C. C.P., we look to the pertinent portion of said statute which requires that such a motion be supported by "the affidavit of at least two credible persons, *residents of the county where the prosecution is instituted.*" (emphasis added). Three persons signed an affidavit stating that they had read appellant's motion and the allegations stated therein were true and correct. Neither the motion for change of venue, the affidavits of appellant, nor the affidavits of the three compurgators, indicates that the compurgators were residents of Bowie County.

In Gibson v. State, 53 Tex.Cr.R. 349, 110 S.W. 41, the necessity for compliance with the statute was emphasized, the Court saying:

"It has been the uniform ruling of this court that, before a defendant is entitled to a change of venue, the provisions of the statute must be complied with. The application must be supported by affidavits of at least two credible persons, *residents of the county where the prosecution is instituted.*" (emphasis added)

In the instant case, we find that appellant's motion for change of venue was not in compliance with Article 31.03, V.A.C.C. P., and the court was not in error in overruling same.

Appellant contends that "the court erred in allowing the prosecutor to treat and question Norma Jean Eddy as if she was a hostile witness, and tell the jury that she was a hostile witness, when there was no evidence she was hostile."

■ Appellant relies on Perkins v. State, 433 S.W.2d 712, where this Court said that "the district attorney at no time despite *repeated objections,* claimed surprise nor laid any predicate to justify impeaching his own witness."[1] (emphasis added)

It appears that appellant asserts two complaints under this contention, the first of which is directed toward the court "allowing the prosecutor to treat and question Norma Jean Eddy as if she was a hostile witness." We interpret this complaint to mean that the court improperly allowed the State to cross-examine and impeach the witness. We have reviewed the testimony of the witness and fail to find any objection made by appellant on this basis. Absent objection by appellant, nothing is presented for review. Grant v. State, Tex.Cr.App., 472 S.W.2d 531; Verret v. State, Tex.Cr.App., 470 S.W.2d 883.

With respect to appellant's complaint that the prosecutor referred to the witness, Norma Jean Eddy, as hostile in the presence of the jury, it is noted that the first two times this occurred no objection was made by appellant. The next time the State referred to the witness as "hostile" appellant made the objection, "We object to these statements before the jury. Why doesn't he read what he has in the statement and ask her if she said that?" If such objection be specific enough to call the court's attention to the use of the term "hostile," it should be noted that appellant never obtained a ruling from the court. See Austin v. State, Tex.Cr.App., 451 S. W.2d 491; Simmons v. State, Tex.Cr.App., 429 S.W.2d 149.

■ Counsel for the State, on another occasion, stated to the court, "Your Honor, please, if the hostility of this witness is not apparent now, it never will be." The court

1. A party cannot attack the testimony of his own witness unless the witness has stated facts injurious to such party. See Article 38.28, Vernon's Ann.C.C.P.; Zanders v. State, Tex.Cr.App., 480 S.W.2d 708; Wall v. State, Tex.Cr.App., 417 S.W.2d 59. Further, surprise must be shown. The proper procedure for showing surprise is discussed in Pelton v. State, 167 Tex.Cr.R. 649, 322 S.W.2d 529.

responded, "Well, go ahead with your examination of her." On still another occasion, the prosecutor stated, "The State contends that this witness is hostile to the State and she has made statements inconsistent with previous statements made to the State, which is a surprise to the State and the State wishes to see her as a hostile witness." No objection was made by appellant to these remarks. If the State's reference to the witness being hostile be error, it is not before us for review absent an objection by appellant. The court's comment, "It is obvious she is hostile," is not preserved for review absent an objection. See Ferrell v. State, Tex.Cr.App., 429 S.W.2d 901; Howard v. State, 420 S.W.2d 706; Franklin v. State, Tex.Cr.App., 409 S.W.2d 422; Steese v. State, 170 Tex.Cr.R. 269, 340 S.W.2d 49.

■ Appellant next contends that the court erred in allowing the witness Suzette Gray to testify to a conversation with Norma Jean Eddy out of the presence of the appellant. It is undisputed that after appellant and Martin arrived at the house of Norma Jean Eddy, appellant went to the bathroom to wash his face and, thereafter, appellant, with a pistol in his hand, entered the room where Martin and Mrs. Eddy were present. The only other occupant in her house was Mrs. Eddy's ten year old son who was asleep. The record reflects Mrs. Eddy testified as follows:

"Q    All right, now when Mr. Norwood came back out with the gun, what did he do with it, if anything?

"A    Well, when I saw he had a gun, I turned around and I left.

"Q    Where did you go?

"A    I went next door.

"Q    To whose house?

"A    Sue Gray's."

Mrs. Gray testified relative to Mrs. Eddy coming to her bedroom window during the early morning hours of the day in question.

Appellant complains of the following testimony of Mrs. Gray regarding the statements of Mrs. Eddy:

"A    She (Mrs. Eddy) said, 'Glenn, Sue, wake up and call the police. Norwood has a gun and is going to shoot James.' We were awakened out of a sound sleep, and it took us a minute to realize who she was talking about, and I said, 'Well, Norma, what has happened?' And she said, 'You haven't heard the commotion going on over here,' and I said, 'No, we hadn't—we had been asleep.' And she said, 'Norwood has been over here bothering me and I told him if he didn't leave, I was going to call James to come get him and I did.' And about this time we heard the gun go off, and I only thought of . . . ."

\*        \*        \*        \*        \*        \*

"Q    . . . What if anything did Mrs. Eddy say to you with reference to Mr. Norwood? About his bothering her and her getting rid of him?"

\*        \*        \*        \*        \*        \*

"A    Well, she was very nervous and upset and she said that he's been pushing me around and I told him to leave me alone. She had been to the doctor in Little Rock earlier with her shoulder. She said, 'He was hurting me and I've just had enough of it. I've never been pushed around like this before and I'm not going to stand for it now.' She asked was there any way she could see out and I told her she could go to the end bedroom window and look out. And it wasn't long, in fact almost by the time I got back to the bedroom window that the police had started arriving and she left the house."

The foregoing evidence was admitted over appellant's objection that same was hearsay.

■ An important exception to the hearsay rule is the exception for spontaneous utterances. The basis underlying the admission of this class of evidence is a psychological one; namely, the fact that when a person is in the instant grip of violent emotion, excitement or pain, he ordinarily loses the capacity for reflection necessary to the fabrication of a falsehood and the "truth will out." Texas Practice, Evidence, McCormick and Ray, Sec. 913, and cases cited therein. The assertion must have been made so soon after the occurrence that the declarant is still in the emotional grip of the shocking event, and the assertion must relate to the event. Evans v. State, Tex.Cr.App., 480 S.W.2d 387; Patterson v. State, Tex.Cr.App., 458 S.W. 2d 658; Bennett v. State, Tex.Cr.App., 382 S.W.2d 930; Oldham v. State, 167 Tex. Cr.R. 644, 322 S.W.2d 616.

In the instant case the utterances were soon after the event, Mrs. Eddy having testified that when she saw the gun in appellant's hand she went next door to the home of Mrs. Gray. The psychological factors which lend credence to a spontaneous utterance were present. The Chief of Police and the appellant whom Mrs. Eddy had filed charges against earlier in the evening came to the home of Mrs. Eddy in the early morning hours. The excitement and anxiety which engulfed Mrs. Eddy are evidenced by her testimony that she left her house immediately when she saw a gun and was unable to testify to anything which transpired after seeing the gun. That stimulus which lends itself to spontaneous statements must have received additional impetus when Mrs. Eddy's statement to Mrs. Gray was punctuated with the sound of gunshot emanating from her (Mrs. Eddy's) house. Mrs. Gray testified that Mrs. Eddy was very nervous and upset. In determining whether an assertion relates to an event, this Court, in Autry v.

State, 143 Tex.Cr.R. 252, 157 S.W.2d 924, said, "The principle of 'res gestae embraces not only the actual facts of the transaction and the circumstances surrounding it, but the matters immediately antecedent to and having a direct causal connection with it.' " In the instant case, we find that the complained of testimony related to the event.

No error is shown in the admission of Mrs. Gray's testimony concerning what Mrs. Eddy told her at the time in question.

Appellant contends that "the court erred in refusing to charge the jury as to drunkenness or incapacity from drink being considered in mitigation."

■ The record contains evidence that appellant had been drinking or was intoxicated on the night in question. Appellant complains of the court's refusal to grant an instruction that the jury could consider appellant's intoxication in mitigation at the punishment stage of the trial. In Butcher v. State, 161 Tex.Cr.R. 169, 275 S.W.2d 672, it is stated:

"The voluntary use of intoxicating liquor will not authorize a mitigation of punishment. Article 36 P.C., Vernon's Ann. P.C. Art. 36, applies only when it has produced temporary insanity. Kincheloe v. State, 146 Tex.Cr.R. 414, 175 S.W.2d 593; Barnett v. State, 144 Tex.Cr.R. 249, 162 S.W.2d 411, 415."

■ We find no proof that appellant was intoxicated or drunk at the time of the crime to the extent that the issue of temporary insanity was raised.

The court was not in error in refusing appellant's requested jury instruction.

■ Appellant contends that the court erred in denying his first motion for continuance. This was based on allegations that appellant was ill and physically unable to go to trial. Dr. J. B. Rochelle, III was

called by appellant in support of his motion and the record reflects the doctor testified:

"Q  Will you say whether he (appellant) is a sick person or a well person at this time?

"A  It depends on the definition.

"Q  By your definition.

"A  I think he has defects, yes, but I don't think he is incapacitated from these proceedings here."

\*  \*  \*  \*  \*  \*

"Q  Is there any reason to believe he is a malingerer?

"A  There is a suspicion I have.

"Q  Do you believe it though?

"A  I do.

"Q  In the absence of malingering, should he be in the hospital now rather than attending trial?

"A  As I said before, I think these other studies should be done. I don't know that there is any particular urgency as to this. I think we could manage his complaints as an out patient. He came to the emergency room supposed to be incapacitated, and it is my opinion that he is not incapacitated at all."

In view of the foregoing testimony, the court was not in error in overruling appellant's motion for continuance.

■ Appellant contends the court erred in permitting a brother of the prosecuting witness to act as bailiff during the trial. At the hearing on punishment, Lloyd Martin, brother of the victim, testified to the bad reputation of appellant. The court had exempted Lloyd Martin from the rule in order that he might act as bailiff over the objection of appellant. The record does not reflect what, if anything, Lloyd Martin had to do with the jury. When the question was before the court on appellant's objection, counsel for the State stated: "It is agreed that Lloyd Martin is a deputy sheriff of Bowie County, Texas,

and James Martin is a police officer of the city of Wake Village, and that Lloyd Martin *has not and will not attend the jury* in the course of this trial." (emphasis supplied) The United States Supreme Court, in the recent case of Gonzales v. Beto, 405 U.S. 1052, 92 S.Ct. 1503, 31 L.Ed.2d 787 (April 17, 1972), held that a conviction could not stand where the sheriff had acted in the dual role of key witness against the defendant and bailiff of the jury. In Gonzales, the sheriff, on several occasions, conducted jurors in and out of the courtroom, ate with the jurors, brought the jurors cold drinks while they were deliberating and on one occasion, at the direction of the judge, stepped down from the witness stand to retire the jury. In Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424, the United States Supreme Court held that petitioner's right to due process of law had been infringed where two crucial witnesses acted as bailiff during the course of a three day trial. In Turner, the jury was sequestered and the two witnesses were in "close and continual association with the jurors." An attempt to distinguish Turner where the trial lasted three days and the jury was sequestered from Gonzales where the jury was not sequestered and the trial lasted one day, was rejected in Gonzales, the Court saying:

"It is enough to bring the petitioner's case within the four corners of Turner that the key witness for the prosecution also served as guardian of the jury, associating extensively with the jurors during the trial."

In the instant case, Lloyd Martin was not a key witness in the case. Fourteen other persons testified as to the bad reputation of appellant. Further, the record fails to reflect what contact, if any, the witness may have had with the jury. This case clearly does not come within the holding of Gonzales v. Beto, supra, and Turner v. Louisiana, supra. See Crawford v. Beto, 385 F.2d 156 (5th Cir., 1967); Bowles v. Texas, 366 F.2d 734 (5th Cir.,

**782**

.1966). Art. 36.24, Vernon's Ann.C.C.P.[2], provides that a witness may not serve as a bailiff, but this Court, in Criado v. State, Tex.Cr.App., 438 S.W.2d 557, held that the failure of the sheriff to furnish the court with a bailiff who was not to be called as a witness would not ordinarily call for reversal unless harm or prejudice was shown. The record before us fails to reflect harm or prejudice to appellant. While we do not condone such practice, we hold that the court did not commit reversible error in exempting the witness-bailiff from the rule under the circumstances of this case.

Appellant's grounds of error numbered 6, 8, 9, 10 and 11 are neither briefed nor discussed by appellant. Thus nothing is presented for review. Article 40.09, Sec. 9, Vernon's Ann.C.C.P.; Linzy v. State, Tex.Cr.App., 478 S.W.2d 950.

Finding no reversible error, the judgment is affirmed.

Opinion approved by the Court.

---

2. Art. 36.24, V.A.C.C.P., provides: "The sheriff of the county shall furnish the court with a bailiff during the trial of any case to attend the wants of the jury and to act under the direction of the court. If the person furnished by the sheriff is to be called as a witness in the case he may not serve as bailiff."